# Johnson *v.* The State.

### *Indictment for Murder.*

1. *Declarations of defendant as evidence.*—Declarations made by the defendant himself, before or after the commission of the homicide with which he is charged, tending to connect him with it, are admissible as evidence against him, although a conspiracy between him and the other persons implicated may not be established.

2. *Declarations and conduct of conspirators, as evidence against each other.*—Under the rule laid down in the case of *McAnally v. State*, (74 Ala. 9), when the evidence establishes, *prima facie*, the existence of a conspiracy between the defendant and others, to commit the crime with which he is charged, the acts, declarations and conduct of the others, in promotion of the purpose or object of the conspiracy, or in relation to it, are competent and admissible as evidence against him; and such evidence was properly admitted in this case.

3. *New trial; refusal not revisable.*—By the settled practice of this court since its organization, a motion for a new trial is addressed to the discretion of the lower court, and its refusal is not revisable by this court on error or appeal.

FROM the City Court of Selma.

Tried before the Hon. JONA. HARALSON.

The defendant in this case, Willie Johnson, was indicted, jointly with Saunders Collier, for the murder of Frances Rodgers, by shooting her with a pistol; and being tried separately, a severance having been granted, was convicted of murder in the first degree, and sentenced to death by

hanging. The deceased was shot and killed on Saturday night, November 19th, 1887, between the hours of eight and nine, by a man who came to her house and called her to the door. Harriet Gladden, who lived in the house with her, thus testified on the part of the prosecution: "I went to the door. A man stood in the porch. He asked me if Frances Rodgers lived there. I said yes. He said he wanted to see her. I asked him if I would not answer. He said no, he wished to see her—that he had a message for her. I told Frances what the man said, and she went to the door. The pistol fired, and she fell." The assailant was not recognized by any one, and he escaped. Other evidence adduced by the prosecution showed that two men made inquiries that night for the house of Frances Rodgers, and went there together, one stopping at the gate, while the other went in and called her out; and the prosecution proceeded on the theory, that these men were the defendant and said Saunders Collier, and that they were instigated to the murder by one Wiley Lewis, who had married a daughter of Frances Rodgers. The defendant adduced evidence tending to show that he was, until late in the evening on the day the murder was committed, in Birmingham, where he, Collier and Lewis lived, or resided most of the time.

The principal witness on the part of the prosecution was one Willie Clark, who testified to several conversations he had heard between the defendant,. Collier and Lewis, and conversations he had had with one or more of them, tending to prove the alleged conspiracy between them. Numerous exceptions were reserved by the defendant to the testimony, but they can not be set out at length. The nature of the testimony, and the grounds of objection, are shown by the following extracts: "The solicitor asked the witness" [after he had testified to his acquaintance with the several parties in Birmingham], "if he had ever heard the defendant say anything about the killing of Frances Rodgers, before the killing occurred, to tell what it was; to which question the defendant objected, on the ground that no conspiracy had been proved, and duly excepted to the overruling of his objection. The witness answered: 'I recollect once, about a week and a half before Frances Rodgers was killed, defendant told me that Wiley Lewis had asked him to come to Selma and kill Frances Rodgers. He said that he went to collect a debt from Lewis, and Lewis would not pay him, and that he told Lewis, if he did not pay him, he would tell what he

[Johnson v. The, State.]

(Lewis) had tried to get him to do—to kill Frances Rodgers.' The defendant moved to exclude these declarations, on the ground that no conspiracy had been proved; and his motion being overruled, he excepted." The witness continued: "At first, defendant said he would tell me, if I promised not to tell. I said I would not tell, and asked what it was. He said Wiley Lewis had been trying to get him to come to Selma, to kill a woman. I asked him who it was, and he said Frances Rodgers, and that Lewis had been trying to buy a pistol to do it with. He told me, if Lewis tried to buy the pistol I had, not to let him have it; and said he gussed he would have been gone, if he could have got a pistol. I told him not to go—to have nothing to do with it, and I tried to persuade him to do nothing of the kind." The bill of exceptions then states, that the defendant "objected to each and every declaration as next above set out, on the ground that no conspiracy has been shown," and an exception was reserved. The witness further testified, that the defendant came to him "about the middle of the week before November 19th," and asked if he had let Lewis have the pistol, and he answered that he had not; that Saunders Collier then came up, and, in the defendant's presence, proposed to buy it, saying that he wanted it for a particular purpose;" that he refused to sell the pistol, but it was stolen Friday night; and that he heard of the murder on Sunday morning. The witness then continued: "I saw the defendant Sunday, about dark. Saunders Collier was with him. I had a talk with them, and said to Saunders, 'Hello, you all got back?' He said 'Yes.' I asked him where my pistol was. He said he had it, and pulled it out, but would not let me have it. He said that nobody knew what had been done but me, and if I told it, he would keep the pistol to blow me up with. I told him he ought to give me the pistol, as he had done what he wanted to do with it; but he said no, that he might give it to me after awhile. The defendant was present all this time, and I asked him who did the shooting. He said Saunders did it. I asked him how many times he shot, and he said once. I then asked Saunders to let me see how many balls were out of the pistol; he showed it to me, and one ball was out. Neither of them mentioned the name of anybody who was shot, and the name of Frances Rodgers was not mentioned." The defendant objected and excepted to the admission of each part of this evidence, and other similar exceptions were reserved. The character of Clark was impeached

on cross-examination, and by other evidence adduced by the defendant.

G. A. ROBBINS, and CHAS. D. CLARKE, for the appellant, cited Whart. Crim. Ev. 698; 2 Whart. Crim. Law, § 1406; 2 Russ. Crimes, 696–8, note z; 1 Greenl. Ev. §§ 111, 214–19; 3 *Ib.* § 92; Archb. Crim. Pl. by Waterman, vol. 3, pp. 618–9; 2 Stark. Ev. 326; *Reg. v. Murphy*, 8 C. & P. 297; *Reg. v. Shellard*, 9 C. & P. 277; *Stewart v. State*, 26 Ala. 44; *Martin & Flinn v. State*, 28 Ala. 71; *Steele v. State*, 43 Ala. 1; *McAnally v. State*, 74 Ala. 9; *Insurance Co. v. Moog*, 78 Ala. 284, and authorities there cited; Wells on Cir. Ev. 88; 1 Leach, C. C. 299; *Rice v. State*, 47 Ala. 38; *Kelso v. State*, 47 Ala. 573; *Burns v. State*, 49 Ala. 370; *McAdory v. State*, 62 Ala. 154.

W. L. MARTIN, Attorney-General, for the State, cited *Amos v. State*, 83 Ala. 1; 1 Brick. Digest, 451, §§ 51–54; 3 *Ib.* 288, § 596; *Bedwell v. Bedwell*, 77 Ala. 587.

STONE, C. J.—Dallas county has a jury system, secured to it by statute, which is peculiar to itself.—Sess. Acts 1882-83, p. 273; *Ib.* 1884–5, p. 192; *Ib.* 1886–7, p. 209. We are not informed that any objection was made to the formation of the grand or petit jury, and we find in the record no ground for objection to this part of the proceedings. Since the decision in *Evans v. State*, 80 Ala. 4, the jury law of Dallas county has been so changed, as that "whenever the judge of the Circuit, or the judge of the City Court of Selma, shall deem it proper to set two or more criminal cases for trial on the same day, said judge may draw and have summoned one jury, or one *venire*, for the trial of all such cases so set for one day."

The chief objections to testimony have for their predicate that there was not sufficient evidence of a conspiracy between the accused and others not on trial, to authorize the admission of the evidence. Much of the testimony to which this objection was interposed, consists of alleged declarations and statements made by the accused himself. These, being in their nature pertinent to the offense charged, and to the defendant's participation therein, were competent evidence against him, whether there was a conspiracy or not.—3 Brick. Dig. 425–6, §§ 286 *et seq.; Ib.* 283, §§ 504 *et seq.*

There was, however, testimony received and excepted to,

the legality of which depended on the establishment of a conspiracy to murder Frances Rodgers. The alleged conspiracy was between the defendant, one Collier, and one Lewis; the last two not on trial. In *McAnally v. State*, 74 Ala. 9, 16, we said: "In charges of crime which, in their nature, may be perpetrated by more than one guilty participant, if there be a previously formed purpose or conspiracy to commit the offense, then the acts, declarations and conduct of each conspirator, done or expressed in promotion of, or in relation to the object or purpose of such conspiracy, become the acts, declaration, or conduct of each co-conspirator, and may be given in evidence against him. But, to allow such testimony to go to the jury, a foundation must be laid by proof sufficient, in the opinion of the judge presiding, to establish *prima facie* the existence of such conspiracy."

The case of *Williams v. State*, 81 Ala. 1, contains a full collection and discussion of many authorities; and while it does not conflict in the least with the principles declared in *McAnally's case*, it lays down certain other principles that are not raised in this case. See, also, *Amos v. State*, 83 Ala. 1.

Under the principles declared in *McAnally's case*, we hold that the testimony of the witness Clark, considered in its entirety, establishes, if believed, at least a *prima facie* case of conspiracy to murder Frances Rodgers, and that the acts, declarations and conduct of each conspirator, done or expressed in apparent promotion of the common object, were competent evidence against each of the others. We speak of Clark's testimony in its entirety, because it is immaterial at what stage of his examination he proved the conspiracy, if he proved it all.—*Bedwell v. Bedwell*, 77 Ala. 587.

What we have said relates to the competency of the testimony, and its sufficiency to make a *prima facie* case, so as to let in testimony of the acts, declarations and conduct of one, as evidence against the other. Its ultimate credibility and sufficiency to justify conviction, was a question for the jury.—*McAnally's case, supra*. We find no errors in the admission of testimony.

It has been the settled rule of this court from its very organization, and never departed from, that we will not review the action of the primary court, in granting or refusing to grant a new trial.—2 Brick. Dig. 276; 3 *Ib.* 676; *Bedwell v. Bedwell*, 77 Ala. 587.

[Bailey v, The State.]

The judgment of the City Court is affirmed. And inasmuch as the day fixed for the execution of the prisoner is now passed, it is the judgment and order of this court, that on Friday, August 9, 1889, the said Willie Johnson be hanged by the neck until he is dead; and the sheriff of Dallas county is charged with the execution of this sentence, in strict conformity to the requirements of the statute.—Code of 1886, §§ 4665 to 4669, inclusive.

Affirmed.

