# Rutledge *v*. The State.

## *Indictment for Murder.*

1. *Evidence of prior difficulties, threats, ill-feeling, and bad character of deceased; when admissible.*—On a trial under an indictment for murder, evidence of prior threats by the deceased against the defendant, ill-feeling or prior difficulties between them, or the character of the deceased as a violent and blood-thirsty man, is not admissible for the defendant, unless some phase of the other evidence tends to establish a case of self-defense.

2. *Same.*—Where evidence as to previous difficulties between the parties is admissible, it must be confined to the collective fact of their gravity or the reverse, and the particulars or merits can not be inquired into.

3. *Self-defense; charge ignoring duty to retreat, or inquiry as to who was aggressor.*—A charge asked, invoking the doctrine of self-defense, is properly refused, when it pretermits all inquiry as to the duty and feasibility of retreat on the part of the defendant; and also when it ignores inquiry as to who was the aggressor, while the evidence tends to show that the defendant himself provoked or brought on the difficulty.

4. *Argumentative charge; charge on part of evidence only.*—A charge which is argumentative merely, and a charge which singles out and gives undue prominence to particular portions of the evidence, are each properly refused.

FROM the Circuit Court of Madison.

Tried before the Hon. H. C. SPEAKE.

The defendant in this case, Jim Rutledge, was indicted for the murder of Dave Donegan, by shooting him with a pistol; was convicted of murder in the first degree, and sentenced to the penitentiary for the term of forty-three years. The killing occurred on the street in Huntsville, on

88  85
96  126

88  85
102  99

88  85
120  328
f122  63
122  78

88  85
f129  78

88  85
140  37

88  85
e141  53

88  85
143  71
143  84

88  85
144  13

the evening of February 20th, 1889, as the deceased was about entering the door of a barber-shop, having his hand on the door-knob when the fatal shot was fired; and having entered and shut the door behind him, the defendant went around to a side window, and fired two more shots through a broken pane. The deceased died, from the effect of the wounds, on the third day afterwards. It was shown that the parties, who were freedmen, had had a fight on the morning of the same day, at the store where the defendant was employed, and two or more former difficulties, and had been on unfriendly terms for some time; that on the evening of the difficulty, and just before it, the defendant had followed the deceased down the street, having crossed over from the side, and accosted him just as he stretched out his hand to open the door of the barber-shop, saying, "Dave, you hit me." According to the testimony of the witnesses for the State, the deceased made no reply, but turned towards the door, when the defendant at once fired; but the defendant, testifying in his own behalf, said that the deceased replied, "No, and I intend to kill you now," at the same time drawing a knife. One witness testified that, when the shot was fired, the parties were not more than two feet apart; and another, that the defendant was standing about the middle of the side-walk, while the deceased had his hand on the door-knob, or stretched out towards it. The defendant was asked, on cross-examination: "Did you cross over the street, and follow the deceased to the barber-shop?" He replied: "Yes, I followed him, I walked behind him." Being then asked why he crossed the street, he replied, "I thought this was a free country, and I had a right to walk where I pleased."

The State adduced evidence of former threats made by the defendant against the deceased, and declarations of ill-feeling; and the defendant adduced evidence of recent threats made against him by the deceased, which had been communicated to him before the killing. In this connection, the defendant reserved several exceptions to the rulings of the court on the admissibility of evidence, as follows: The defendant, while testifying as to his fight with the deceased on the morning of the day of the killing, was asked by his counsel to "state whether or not you were hurt in that difficulty by the deceased, and to what extent." The court sustained an objection to this question, and the defendant excepted. Ben Scott, a witness for the defense, testify-

ing to the difficulty between the parties in the morning, was asked by defendant's counsel to "state what injury, if any, and the character of the same, the deceased inflicted on defendant in that difficulty;" and testifying to another difficulty between them about one week previously, "state whether the deceased then made an attack on defendant, and the character of the same;" and in reference to another difficulty several weeks before, when defendant was "keeping the door at a dance," the witness stated that the deceased refused to pay the charge for admittance, "said he would come in any way, *pulled out a pistol, placed it to the defendant's breast*, and passed in." The court sustained objections to each of said questions, and to the italicized words, on the ground that the evidence related to the particulars of the difficulty; and the defendant excepted. The witness testified, also, that he had attempted to bring about a reconciliation between the defendant and the deceased, but that the deceased "would not make friends." The court excluded the latter part of this statement, on objection by the State, and the defendant excepted; and other exceptions were reserved to the exclusion of evidence of uncommunicated threats by the deceased against the defendant.

The defendant asked the following charges in writing, and duly excepted to the refusal of each:

(1.) "At the time the defendant fired at the deceased, if the jury believe that the circumstances were such as to create in his mind a reasonable belief of impending necessity, these circumstances are to be ascertained by the jury, and they may consider the condition of the party killing as well as of the party slain; and if they find the circumstances such as to create in the mind of the accused a reasonable belief that this danger was imminent, then the law would say that he might strike in his own defense."

(2.) "If the jury believe from the evidence that the defendant did not provoke the difficulty, and that the deceased had previously indicated hostility to the defendant by different acts, and had made threats against the life of the defendant, which had been communicated to the defendant; then the jury can look to these threats and acts of hostility, in determining whether the defendant, when he fired the fatal shot, acted under the reasonable and honest conviction that it was necessary for him to fire, in order to save his own life, or to prevent great bodily harm."

(3.) "If the jury believe that all the facts of the case,

[Rutledge v. The State.]

at the time the defendant shot Dave Donegan, were sufficient to create·in the mind of a reasonable man a just apprehension of imminent danger to life or limb, then the defendant had the right to act on such appearances, and to kill the deceased; and their verdict should be not guilty, provided they believe defendant did not provoke the difficulty."

(4.) "If the jury believe that the deceased had made threats to take the life of the defendant, and that these threats had been communicated to the defendant,. and that the deceased, at the time of the shooting, was making some demonstration, or overt act, towards the accomplishment of his threats, and the defendant had reason to believe, from such demonstration, that he was in imminent danger to life, or other grievous bodily harm; then the defendant had a right to act on such appearances, provided the jury believe that he had not provoked the difficulty."

(5.) "If the jury believe from the evidence that Dave Donegan was in the act of drawing, or had drawn a knife on the defendant, before the defendant drew his pistol, and that the defendant had reason to believe that he was in danger of great bodily harm; then the defendant had the right to fire, and the verdict of the jury should be not guilty, provided they believe that the defendant did not provoke the difficulty."

WM. RICHARDSON, for appellant.—(1.) The evidence excluded by the court below did not, in any one instance, relate to the particulars or merits of the difficulty, but only tended to show the nature and gravity of it.—*McAnally v. State*, 74 Ala. 17; *Gray v. State*, 63 Ala. 67; *Tidwell v. State*, 70 Ala. 33; *Field v. State*, 47 Ala. 607; *Garrett v. State*, 76 Ala. 18. (2.) The evidence showing the hostility of the deceased, or his refusal to make friends with the defendant, and uncommunicated threats, ought to have been admitted.—*Polk v. State*, 62 Ala. 237; *Henderson v. State*, ·70 Ala. 29; *Ford v. State*, 71 Ala. 385; *Jones v. State*, 76 Ala. 8; *Green v. State*, 69 Ala. 6. (3.) The charges asked ought to have been given.—*Oliver v. State*, 17 Ala. 599; *De Arman `v. State*, 71 Ala. 363; *Ford v. State*, 71 Ala. 385; *Rogers v. State*, 62 Ala. 170; *Jones v. State*, 62 Ala. 170.

WM. L. MARTIN, Attorney-General, and OSCAR R. HUNDLEY, for the State.—(1.) The merits or particulars of former

difficulties between the parties can not be given in evidence. *McAnally v. State*, 74 Ala. 9; *Gray v. State*, 63 Ala. 66; Clark's Manual, § 375. (2.) Under all the evidence in the case, including that of the defendant himself, a case of self-defense was not presented, and evidence of prior threats was inadmissible.—*Roberts v. State*, 68 Ala. 156; *Myers v. State*, 62 Ala. 599; *Paine v. State*, 60 Ala. 80; *Poe v. State*, 87 Ala. 65. (3.) The charges asked were faulty in many particulars. They do not refer to the evidence, as a basis of what the jury may believe; and some of them, if not all, are argumentative, misleading, and abstract. They ignore the duty of retreat, and omit all inquiry into the question of fault in bringing on the difficulty.—*Eiland v. State*, 52 Ala. 322; *Mitchell v. State*, 60 Ala. 26; *Rogers v. State*, 62 Ala. 170; *Cross v. State*, 63 Ala. 40; *Ingram v. State*, 67 Ala. 67; *Storey v. State*, 71 Ala. 329; *DeArman v. State*, 71 Ala. 351; *Wills v. State*, 73 Ala. 362; *Tesney v. State*, 77 Ala. 33; *Henderson v. State*, 77 Ala. 77; *Harrison v. State*, 78 Ala. 5; *Brown v. State*, 74 Ala. 478; *Carter v. State*, 82 Ala. 13; *McKee v. State*, 82 Ala. 32; *Poe v. State*, 87 Ala. 65; *Squire v. State*, 87 Ala. 44; *Taylor v. State*, 48 Ala. 180.

McCLELLAN, J.—We understand the rule in respect to the admission of evidence, on the part of a defendant on trial for murder, of previous threats by, or difficulties with, or ill-feeling on the part of the deceased, to be this: that when any phase of the testimony would, if believed, present a case of self-defense, then the accused, using this aspect of the facts adduced as a predicate therefor, may go further, and strengthen it, by showing that the deceased had threatened him, or entertained ill-feeling toward him, or that there had been difficulties between them; and a like doctrine obtains with respect to evidence of the violent character of the slain. Or, to state the principle in a more concrete form, the evidence adduced must have some tendency to establish the constituents of the right to destroy life that life may be preserved—which are, that the accused was without fault in bringing on the fatal rencounter; that he was in imminent peril, real or reasonably apparent, of loss of life or limb; and that he could not, as the matter presented itself to him, retreat or avoid the combat with safety to himself—before any state of facts exists in the case upon which testimony of character, threats, ill-feeling, &c., of the deceased, could shed any light. The theory of the rule is, that a right to

kill can never be the result of the violent, blood-thirsty disposition, revengeful feeling, or threats of the deceased; and hence, until there are facts offered which go in some measure to establish the necessity to strike as the law defines that necessity, such evidence is patently irrelevant. These matters, in other words, are competent to give character to a necessity otherwise shown; and no such necessity being otherwise shown, there is an utter absence of the predicate upon which alone such qualifying evidence should be received.—*Prickett v. State,* 22 Ala. 39; *Quesenberry v. State.* 3 S. & P. 308; *Franklin v. State,* 29 Ala. 14; *Roberts v, State,* 68 Ala. 156; *Myers v. State,* 63 Ala. 599.

We are aware that there are some cases, notably that of *Dupree v. State,* 33 Ala. 380, which militate against the views expressed above, as to communicated threats—and evidence of ill-feeling, difficulties and character (of the deceased) stands upon the same footing, when brought to the touch of the principle under consideration—but we can not follow them. We are unable to conceive how any sort of proof as to the *animus* of the deceased can be of importance, in a case where the worst character, the bitterest enmity, and the most deadly threats, on his part, may be fully conceded, and it be shown that no act consonant with such character, or resulting from such enmity, or in the execution of such threats, was done by the deceased; or that, if an act was committed by him, it grew out of a present provocation on the part of the defendant, or was not greatly dangerous to life, or was of such character as that the defendant might have safely retreated and avoided the danger.

In the case at bar, the evidence for the prosecution shows an unprovoked, unnecessary, deliberate, and malicious killing. The testimony of the defendant in his own behalf entirely fails to make a case of self-defense, in that it affirmatively shows that he followed the deceased, accosted him in relation to a difficulty they had had that morning, and thus brought on, and was the aggressor in the difficulty; and also, in that there is nothing adduced which tends in any degree to show that defendant was in any real or apparent danger, which he could not have easily and safely avoided by a retreat. On no phase of the evidence, therefore, was there a predicate for the admission of proof of former difficulties in the interest of defendant, or ill-feeling on the part of the deceased toward him. The evidence excluded was all of this character, and

[Rains v. The State.]

the action of the Circuit Court in that behalf was free from error.

The evidence as to previous difficulties, moreover, went to the particulars or merits of such difficulties, as distinguished from the collective fact of their gravity or the reverse, and was, on this ground alone, properly excluded. *Lawrence v. State*, 84 Ala. 424; *Garrett v. State*, 76 Ala. 18; *McAnally v. State*, 74 Ala. 9; *Gray v. State*, 63 Ala. 66; *Ross v. State*, 62 Ala. 224.

All the charges requested by the defendant, which were refused by the court below, were bad, in that they pretermitted all inquiry as to the duty and feasibility of retreat on the part of the defendant.—*Eiland v. State*, 52 Ala. 322; *Mitchell v. State*, 60 Ala. 60; *Poe v. State*, 87 Ala. 65; *Cribbs v. State*, 86 Ala. 613.

Some, if not all of these instructions, were faulty on other grounds also. Thus, the aspect of the evidence most favorable to the defendant, shows that he was the aggressor on the occasion of the homicide—*Jackson v. State*, 83 Ala. 76; yet charge No. 1 authorizes an acquittal without an inquiry on the point, whether he provoked or brought on the fatal rencounter.—*Jackson v. State*, 77 Ala. 18; *Tesney v. State*, 77 Ala. 33; *DeArman v. State*, 71 Ala. 351; *Cleveland v. State*, 86 Ala. 1.

Charge No. 2 was bad, also, as being argumentative, and singling out and giving undue prominence to selected portions of the evidence.—*Goley v. State*, 85 Ala. 334.

The record discloses no error, and the judgment below is affirmed.

*Indictment for Murder.*

