# Goodwin v. The State.

*Indictment for Murder.*

1. *Jurors; when venire not quashed.*—Where the copy of the *venire* served on the defendant in a capital case contained the name of F. G., Jr., and when, upon the organization of a jury for the trial of said defendant, the name of F. G., Jr., is called, one F. G., an old man 70 years old, appeared and claimed his exemption for over age, which exemption was allowed by the court, a motion to quash the *venire* is

[Goodwin v. The State.]

properly overruled; and it is not error for the court to order the sheriff to summon F. G., Jr., and to stop the proceedings until such juror appears in court.

2. *Same; error to put upon defendant a juror whose name was not drawn from jury box; special jury law.*—Where a special jury law provides that the slips containing the names of the regular jurors drawn for a week of a court, and the slips containing the names of the jurors drawn under the direction of the court for the trial of a capital case, shall be delivered to the clerk of the court, who shall preserve them until the meeting of the court, and that upon the trial of a person charged in said court with a capital offense the slips containing the names of the jurors drawn under the direction of the court, together with the slips drawn by the jury commissioners, shall be placed in a box, or some substitute therefor, and that such slips are to be drawn therefrom, one by one, until the jury is completed, if upon the organization of a jury for the trial of a capital case a slip of paper drawn from the box or hat has on it "T. M., Jr.," but the *venire* returned by the jury commissioners to the clerk of the court and the copy of the *venire* served on the defendant had on them "T M.," it is error to put upon the defendant as a juror, against defendant's objection, one "T. M.," who answered to the call of "T. M., Jr.," and who had been summoned, and was serving, as a regular juror for the week, since he was not the man drawn by the jury commissioners; the special law requires that the persons whose names are drawn from the jury box, whether by the jury commissioners or under the direction of the court, shall be the very persons from whom the defendant in a capital case is entitled to select a jury.

3  *Murder; evidence of position of parties at time of killing competent.*—On a trial for murder, it is competent to prove the relative positions of the defendant and deceased when the latter was shot; and the testimony of one who saw the shooting, that he pointed out the respective positions of the defendant and deceased when the shooting occurred to another person, who measured the distance between the two points, as well as the testimony of the one who made the measurement as to the distance, is admissible in evidence.

4. *Proof of character.*—Where defendant has put his character for peace and quiet in issue, it is permissible for the State, on cross-examination of the witnesses, who testified to his being a peaceable and quiet man, to ask them if they had not heard of specified acts of violence committed by the defendant.

5. *Admissibility of confessions.*—Where, on a trial for murder, the defendant testifies that, when he surrendered the jailor took him in his office, and told him it would be better for him to tell all about the difficulty; and another witness, who was present when the defendant surrendered and went into the office with him, but was not present all the time the defendant was in the office, testified that while present he did not hear the jailor tell the defendant it would be better to tell all about the killing, and the jailor denied that he made

such remark, or any other threats or promises, and testified that what the defendant said was voluntary, the defendant's confession, thus made to the jailor, is properly admitted in evidence.

6. *Confessions; province of the jury in reference thereto.*—When confessions are admitted in evidence, and if the jury are not satisfied from all the evidence that they were voluntarily and intelligently made, it is the province and duty of the jury to reject them as wanting in credibility, or as not entitled to any weight in determining the question of guilt or innocence

7. *Same; same.*—The admissibility of confessions is for the court, their credibility for the jury ; and an instruction that "If the jury believe from the evidence that the jailor told the prisoner that it would be worse for him if he did not confess, before said confession was made to him, then the jury will disregard said confession in considering the evidence in this case," is erroneous and properly refused.

8. *Same; abstract charge.*—Where there was no evidence introduced on the trial that there were threats made to induce defendant's confessions, a charge that "If the jury believe from the evidence that the jailor made any threats to the prisoner, before said confession was made to him, then the jury will discard said confession in weighing the evidence," is not only erroneous in giving the jury the right to pass upon the admissibility of the confessions, but is also properly refused as being abstract.

9. *Self-defense; charge ignoring duty of retreat.*—On a trial for murder, a charge requested by the defendant, which instructs the jury that "It is not necessary that there should be actual danger of death or great bodily harm in order to justify the taking of human life, but, if the jury are satisfied from all the evidence in the case, that the circumstances attending the firing of the fatal shot was such as to impress Phillip Goodwin, the defendant, with a reasonable belief that at the time of firing the shot it was necessary in order to prevent death or great bodily harm to his person, then they must acquit the defendant, unless they further believe that the defendant was not free from fault in bringing on the difficulty," is erroneous and properly refused, because it ignores the duty of retreat. (*Keith v. The State*, 97 Ala. 32, overruled as to this point.)

10. *Same; charges ignoring duty of retreat, and question of freedom from fault in bringing on the difficulty.*—Where, on a trial under an indictment for murder, the defendant attempts to justify the homicide on the ground of self-defense, if the charges requested by him, in which he seeks to submit the determination of this defense to the jury, ignore the defendant's duty of retreat and all inquiry into the question of defendant's freedom from fault in bringing on the difficulty, such charges are erroneous and properly refused.

APPEAL from the City Court of Mobile.
Tried before the HON. O. J. SEMMES,

[Goodwin v. The State.]

The appellant was indicted and tried for the murder of John Poole, and was convicted of murder in the first degree, and sentenced to be hanged.

The evidence in reference to the rulings of the court upon the motion to quash the *venire* is sufficiently stated in the opinion. The testimony for the State, as is shown by the bill of exceptions, tended to show that on the morning of the killing, the defendant came up in front of the house, upon the porch of which Poole was standing, and after abusing Poole said he was going to shoot him; that Poole told the defendant not to shoot him, and that thereupon, after walking a short distance by the yard fence, the defendant raised his gun and fired upon Poole, the shot entering his right side; that there was no demonstration on the part of Poole; and that his hands were hanging down by his side when he was shot. The defendant testified in his own behalf that when he shot said Poole he, Poole, had cursed him and was starting from the porch in an angry manner and reached his hand behind him as if to draw a pistol, whereupon the defendant fired.

During the examination of Jerry Busby, as a witness for the State, and after he had testified that he was sitting on the porch of the house where Poole was shot, at the time the shooting occurred, and that he knew the respective positions of the parties, the said witness was asked the following question by the solicitor: "Did you show Mr. Dorlan the place where Poole and Goodwin were each standing when the shooting took place?" The defendant objected to this question, and duly excepted to the court's overruling his objection. The witness answered: "I pointed out to Mr. Dorlan the place where Poole was standing on the gallery when he was shot, and also the place where Goodwin was standing when he shot Poole. I saw Mr. Dorlan measure the distance between these two points." Defendant excepted to the court overruling his motion to exclude this answer.

Upon the introduction of Phelan Dorlan, who was sheriff of Mobile county, as a witness for the State, the solicitor asked him the following question: "Did Mr. Jerry Busby show you the place where Mr. Poole and Goodwin were each standing at the time of the shooting?" The defendant objected to this question, and du-

ly excepted to the court's overruling this objection.
The witness answered: "Mr. Jerry Busby showed me
the place where Poole and Goodwin were each standing
at the time of the shooting. I measured the distance
between these two points." The defendant moved to
exclude this answer from the jury, and duly except-
ed to the court's overruling his motion. The solicitor
then asked the witness: "What is the distance be-
tween these two points?" The defendant objected to
this question, and duly excepted to the court's overrul-
ing his objection; and upon the witness giving the dis-
stance according to the measurements he had made, the
defendant moved to exclude said answer, and duly ex-
cepted to the court overruling his said motion.

Upon the introduction of several witnesses by
the defendant, who testified as to his good reputation for
peace and quiet, the solicitor on cross-examination ask-
ed each of the witnesses the following question: "Did
you hear that Phillip Goodwin hit a man with an axe
at Cuba, Mississippi, before he came to Venetia," the
place where the shooting occurred, "and that was the
reason he left Cuba?" The defendant separately ob-
jected to each of these questions, as asked the several
witnesses, the court overruled each of such objections,
and the defendant separately excepted to each of these
rulings. The facts in reference to the alleged confes-
sions of the defendant are sufficiently stated in the
opinion.

Upon the introduction of all the evidence, the defen-
dant requested the court to give the jury the following
written charges, and separately excepted to the court's
refusal to give each of them as asked: (3.) "If the
jury believe from the evidence that the jailor told the
prisoner that it would be worse for him if he did not con-
fess, before said confession was made to him, then the
jury will disregard said confession in considering the
evidence in this case." (4.) "If the jury believe from
the evidence that the jailor made any threats to the pris-
oner, before said confession was made to him, then the
jury will discard said confession in weighing the evi-
dence in this cause." (6.) "If the jury believe from the
evidence that, at the time the defendant fired the fatal
shot, the deceased was advancing towards defendant
in an angry and threatening manner, and as he advanc-

ed put.his right hand towards his hip pocket as if to draw his pistol, then the defendant could lawfully antici- pate his assailant, and fire upon him first, and without waiting till the deceased drew his pistol; and the jury must acquit the defendant." (7.) "If the jury be- lieve from the evidence, that, at the time the fatal shot was fired, the deceased cursed the defendant, and was advancing towards him in an angry and threatening manner, and as he advanced put his right hand back to- wards his hip pocket as if to draw his pistol, then the defendant could lawfully fire upon his assailant; and the jury must acquit him." (8.) "If the jury believe from the evidence, that, at the time the fatal shot was fired, the deceased cursed or abused the defendant, and ad- vanced towards him in an angry and threatening man- ner, and as he advanced put his right hand back towards his hip pocket, as if to draw his pistol, and that the de- fendant had good reason to believe and did believe that he was in great danger of life or limb or of great bodily harm from the deceased, then he could lawfully fire up- on the deceased; and the jury must acquit him." (9.) "If the jury believe from the evidence that, at the time the fatal shot was fired, the defendant had good reason to believe and did believe that he was in great danger of life or limb, or of great bodily harm, at the hands of the deceased, then the jury must acquit him." (10.) "If the jury believe from the evidence, that, at the time the fatal shot was fired, the defendant had good reason to believe and did believe that he was in danger of life or limb, or of great bodily harm, at the hands of the de- ceased, then the defendant might lawfully anticipate the deceased and fire upon him, without waiting for him to draw his pistol, and the jury must acquit him." (11.) "If the jury believe from the evidence, that, at the time the fatal shot was fired, the deceased cursed or abused the defendant, and was advancing towards him in an angry and threatening manner, and, as he advanced, put his right hand back towards his hip pocket as if to draw his pistol, and the defendant had good reason to believe and did believe that he was in great danger of life or limb or of great bodily harm from the deceased, then the defendant might act on appearances, and fire, upon the deceased, without waiting for the deceased to draw his pistol, and the defendant, under such circum-

[Goodwin v. The State.]

stances, could lawfully fire upon the deceased, even if it should turn out that the deceased had no pistol in his pocket.'' (12.) "If the jury believe from the evidence that, at the time the fatal shot was fired, the deceased cursed or abused the defendant, and was advancing towards him in an angry manner, and as he advanced put his right hand back towards his hip pocket as if to draw his pistol, and the defendant had good reason to believe and did believe that he was in great danger of life or limb or of great bodily harm from the deceased, then the defendant might act on appearances, and fire upon the deceased without waiting for the deceased to draw his pistol, and the defendant, under such circumstances, could lawfully fire upon the deceased, even if it should turn out that the deceased in fact had no pistol in his pocket at the time ; and the jury must acquit the defendant.'' (29.) "If the defendant, at the time he shot, believed that he was in danger of his life, or of great bodily harm from the deceased, though in fact he was mistaken, and was not in actual danger ; yet, if he did so believe, and had reasonable grounds to so believe, the defendant had the right to shoot in self-defense, and the jury must acquit him.'' (39.) "It is not necessary that there should be actual danger of death or great bodily harm in order to justify the taking of human life, but, if the jury are satisfied from all the evidence in the case, that the circumstances attending the firing of the fatal shot was such as to impress Phillip Goodwin, the defendant with a reasonable belief that at the time of firing the shot it was necessary in order to prevent death or great bodily harm to his person, then they must acquit the defendant, unless they further believe that the defendant was not free from fault in bringing on the difficulty.

McCARRON & LEWIS and HENRY TONSMEIRE, for appellant.—The juror, Thomas McDonald, should not have been put upon the defendant as one of the *venire* drawn for the trial of this case.—Acts 1882–83, p. 501 ; Acts 1884–85, p. 534 ; Acts 1886–87, p. 201 ; Acts 1890–91, p. 916 ; 16 Amer. & Eng. Encyc. of Law, 121. The confession of the defendant should not have been introduced in evidence.—*Redd v. State*, 69 Ala. 255. The 39th charge requested by the

[Goodwin v. The State.]

defendant should have been given.—*Keith v. State*, 97 Ala. 32; *DeArman v. State*, 71 Ala. 351; *Cross v. State*, 63 Ala. 40 ; 3 Brick. Dig. 221, 223. The other charges requested by the defendant should have been given.—*De-Arman v. State*, 71 Ala. 351.

Wm. L. MARTIN, Attorney-General, for the State.—The court did not err in its rulings upon the formation of the jury, as shown by the special jury law for Mobile county.—Acts 1884-85, p. 539; Acts 1890-91, p. 916 ; 16 Amer. &. Eng. Encyc. of Law, 121. The testimony of the witnesses Busby and Dorlan was competent and admissible.—*Green v. State*, 96 Ala. 29. The defendant having put his character in issue, it was competent for the State, on cross-examination, to ask the witness whether they had heard of any specified acts of violence on the part of the defendant.—*Moulton v. The State*, 88 Ala. 116. The 39th charge requested by the defendant was properly refused.—*Cribbs v. State*, 86 Ala. 613 ; *Rutledge v. Stale*, 88 Ala. 85; *Gibson v. The State*, 89 Ala. 121; *Cotten v State*, 91 Ala. 106; *Davis v. State*, 92 Ala. 20 ; *Perry v. State*, 94 Ala. 25. Charges 3 and 4 were properly refused, because they submitted to the jury the question of the admissibility of the confessions in evidence.—3 Brick. Dig. 285, § 543. The confessions were properly admitted.—*Maull v. State*, 95 Ala. 1.

HARALSON, J.—1. On the day set for the trial of this cause, the names of the 100 persons allowed and summoned for the trial, were placed in a hat, and the drawing proceeded under the direction of the court, and according to the terms of the statute, (Acts 1884–85, p. 539), until the name of Francisco Gomez, Jr., was called, when one Francisco Gomez appeared in person, who being sworn, stated that he was seventy years old; that he was not Francisco Gomez, Jr. ; his son bore that name, and lived in Mobile county. The old man claimed his exemption for over age, which was allowed by the court. The copy of the *venire* that had been served on defendant, contained the name of Francisco Gomez, Jr. The defendant then moved to quash the *venire,* which motion the court denied, and ordered the sheriff to summon Francisco Gomez, Jr., instanter, and stopped the

[Goodwin v. The State.]

proceedings till said Gomez, Jr., appeared in court.    He
was challenged peremptorily by the State.

The defendant excepted to the refusal of the court to
quash the *venire*, and also excepted to the court order-
ing the sheriff to go out and summons . . d. Francisco
Gomez, Jr.    It seemed to be difficult to satisfy the de-
fendant.    He moved to quash the *venire*, because Gom-
ez, Jr., was not present, and had not been served, and
when the court took the time and trouble and had him
brought in, he objected to this procedure.    The court,
by its action, put defendant in the same  position exact-
ly, as to this juror, that he would have occupied, if he had
been served in the first instance, and had been present in
court.    It was not shown that there was any other Fran-
cisco Gomez, Jr., in the county, and the presumption is,
that this was the man whose name was drawn from the
jury box by the court, and served 'on defendant, as one
of the special *venire* for his trial.    There was no error
in the rulings as to this matter.—Code, § 4322.

2.    The drawing proceeded, as before, until a slip
containing the name of Thomas McDonald, Jr., was
drawn, and in response to the call, a man appeared, who
being duly examined, said his name was Thomas McDon-
ald; that he lived in Mobile county and had been sum-
moned for the week; that there was another family in
Mobile county by the name of McDonald, of kin to him,
in which there were two Thomas McDonalds—father
and son—but he did not know whether the son was call-
ed McDonald, Jr., or not.    It is stated in the bill of
exceptions, that " the slip of paper drawn from the hat
by the sheriff, had on it, 'Thomas McDonald, Jr., Co.,'
the latter affix standing for county.    The *venire* return-
ed by the jury commissioners for Mobile county to the
clerk of the court had on  it, 'Thomas McDonald, Co.',
and  the copy served on the defendant, had on it, 'Thom-
as McDonald, county.'    The sheriff stated that the man,
Thomas McDonald, who had appeared in answer to the
call, was the man whom he had summoned as a juror,
and, that he was on the regular jury for the week."

The special jury law of Mobile county provides, that
the jury commissioners shall draw thirty-six names from
the "city court jury box," and these shall be recorded
as the petit jurors for the first jury week of the next
term of the city court, and that the slips which have

been drawn, "shall be delivered to the clerk of the city court, who shall carefully preserve the same until the meeting of said court." It is made the duty of the clerk to direct, at once, to the sheriff, a writ commanding him to summons the *persons drawn* as petit jurors, and named in the writ to appear as such. On the trial of a person charged in said court with the commission of a capital offense, it is provided, that the judge—when he has made his order fixing the day of trial and the number of special jurors allowed defendant for his trial— shall direct the clerk to draw from the jury box, in open court, the number of additional jurors specified in such order, and as the names of such jurors are drawn, they are to be entered on the minutes of the court, "and the slips so drawn shall be preserved by the clerk in a separate package until disposed of as directed." On the day of trial, "the slips containing the names of the regular jurors drawn for the week in which such trial is set—(which have been returned to the clerk by the jury commissioners who drew them from the box)—together with the slips containing the names of the additional jurors drawn under the direction of the court, shall be folded or rolled up and placed in a box, or some substitute therefor and shaken together, and such officer as may be designated by the court, must, in the presence of the court, draw out such slips, one by one, until the jury is completed."

The bill of exceptions in addition to the statements above recited, taken from it, contains this further statement as to the drawing of the jury in this case, viz.: "The court ordered the sheriff to proceed with the call of the *venire* drawn for the trial of this cause, and thereupon the sheriff put into a hat, the small slips of paper *which had been drawn by the jury commissioners* for Mobile county, and each of which slips of paper contained the name of a juror written thereon, and proceeded with the call of said *venire* by drawing from said hat one of said slips of paper at a time with the name of a juror thereon," until the names of Gomez, Jr., and Thomas McDonald, Jr., were called.

The word "Junior," or "Jr.", it has been held, is no part of the name of a person who uses it as an affix to his name, but is ordinarily a mere description of the person. The word means, younger, later born, later in office

or rank.   And where two reside in the same place, and one uses the addition, Jr., they will be presumed to be father and son.—16 Amer. & Eng. Encyc. of Law, 121.

The statute under construction seems to require that the persons whose names are drawn from the jury box, whether by the commissioners, or under the direction of the court, shall be the very persons to whom the defendant in a capital case is entitled, from whom to select a jury.   The particularity with which the identical slips drawn from the jury box are to be preserved by the clerk, to be used in the drawing of the jury, in addition to the terms of the statute itself, leaves us no room to doubt on this point.   It was not intended that the prisoner should be subject, as to this matter, to the discretion or the mistakes of the officers entrusted with the execution of the law.   As we have seen, the bill of exceptions states positively, "that the sheriff put into a hat the small slips of paper which had been drawn by the jury commissioners,'' from the jury box.   It is certain, therefore, that a man by the name of Thomas McDonald, with the affix of Jr., was drawn by the commissioners from said box, was returned by them to the clerk, and was placed by the sheriff in the hat and was drawn out by him ; and that a mistake was made by the commissioners in copying their list from the slips to be returned to the court, or else, the clerk made the mistake in copying the writ for the sheriff ; but, however it may have occurred, it is equally certain, that the Thomas McDonald, to whom the defendant was entitled, was not the one on the *venire* and who responded to the call of Thomas McDonald, Jr.   The defendant objected to having said juror put upon him, but his objection was overruled and he excepted.   The ruling of the court was erroneous.

3.   There was no   merit   in   the   objections to the   testimony   of   the   witnesses—Busby   and Dorlan—that   Busby,   who   saw   the   shooting,   pointed out   to   Dorlan   the   places   where   the   deceased   and   defendant   were   standing,   at   the   time of the shooting, and that Dorlan measured and testified to the distance between the two points.   The relative positions of the parties at the time one shoots and kills the other, is always competent, and the method pursued to prove it in this case was free from objection.   Bus-

by's evidence was for the purpose of identifying two points, the distance between which, important to know, had been measured by Dorlan.—*Green v. State*, 96 Ala. 29.

4. The defendant put his character for peace and quiet in issue, and it was permissible for the State, on cross-examination, to ask the witnesses who testified in favor of defendant, on that issue, if they had not heard of specific acts of violence on the part of the defendant.— *Ingram v. The State*, 67 Ala. 67; *DeArman v. The State*, 71 Ala. 351; *Hussey v. The State*, 87 Ala. 121; *Moulton v. The State*, 88 Ala. 116; *Thompson v. The State*, 100 Ala. 70.

5. The defendant, after he had shot deceased, surrendered himself at the jail of Mobile county. He testified, that the jailor carried him into the hall of the jail, and one of the deputies started away with him, when the jailor called, and told the deputy to bring him into the office, and there, the jailor interrogated him about the difficulty, and told him it would be better for him to tell all about it. Rube Dorlan, for the State, testified that he was present when defendant surrendered himself to the jailor, and went with them into the office, but was not present all the while the jailor had the defendant in the office, but while present he never heard the jailor, or any one else tell the defendant, it would be better for him to tell all about it, or that it would be worse for him, if he did not; and no threats or promises were made, and what he stated, was voluntarily said. The jailor testified, also, that he did not tell him that it would be better or worse for him if he did or did not tell about the killing, that he did not threaten him or make him any promises; but all he said was voluntary. Both these witnesses testified to the confession as made,—that defendant stated he had had a difficulty with Pool on the day before the killing, and that he had shot him, "so he could get away, and because he said he was going to kill him, and he wanted to be as good as his word." The confession to these witnesses was admitted by the court, against the objection and exception of the defendant. He also confessed to Dr. Inge, the county physician, who testified that he did so voluntarily, without the influence of threats or promises. The confession was in substance, that he had had a difficulty with Pool the day

[Goodwin v. The State.]

before he shot him, about a difference between them as to defendant's account; that Pool took his pistol and ran him out of the house; that the more he thought of it, the madder he got, and that after he shot him; his first thought was to run away, but he thought it would be no use, as Mr. Dorlan would catch him, so he came and gave himself up. These confessions were properly admitted.—*Maull v. The State*, 95 Ala. 1.

6. Charge 3 requested by defendant was properly refused. The admissibility of confessions is for the court, their credibility for the jury. When confessions are admitted on controverted questions of fact, this court will not revise the rulings of the lower court, admitting them unless they appear to be manifestly wrong.—*Bonner v. The State*, 55 Ala. 242. And, when such confessions are admitted, if the jury, from all the circumstances, are not satisfied they were voluntarily and intelligently made, it is their province and duty to reject them as entitled to no weight in passing on the question of the guilt or innocence of the accused.—*Young v. The State*, 68 Ala. 570. The fourth, is vicious for a like reason, and because it is abstract. There is no evidence that there were any threats made to induce the confessions.

7. The refusal of the court to give charge numbered 39 is assigned as error. It seems to be a copy of one refused in the case of *Keith v. The State*, 97 Ala. 32, which was there held to be a proper one, and its refusal error. We have other and some later adjudications, however, which make that an erroneous ruling. There was no error in the refusal of the court to give said charge.— *Sullivan v. The State, infra; Holmes v. The State*, 100 Ala. 80; *Webb v. The State*, 100 Ala. 47; *Gibson v. The State*, 89 Ala. 121.

8. The remaining charges asked and refused ignored the duty of retreat, and all inquiry into the question of freedom of defendant from fault; and 6th and 7th are subject to the further infirmity of ignoring the existence of reasonable grounds for believing, and that defendant did believe, he was in peril of life or great bodily harm, when he shot deceased.—*Cribbs v. The State*, 86 Ala. 613; *Rutledge v The State*, 88 Ala. 85; *Gibson v. The State*, 79 Ala. 121; *Cotten v. The State*, 91 Ala. 106; *Davis v. The State*, 92 Ala. 20; *Perry v. The State*, 94 Ala. 25; *Wilkins v. The State*, 13 So. Rep. 312.

For the error in putting the juror, McDonald, on the defendant, and not excluding him from the *venire*, the judgment of the court below must be reversed.

Reversed and remanded.

COLEMAN, J.—It might be inferred from the opinion in this case, that the charge requested, and which apparently was copied from the *Keith Case* was inherently vicious. The case of *Jones v. The State*, 76 Ala. 8, was reversed because of error in refusing a charge, in which the question of retreat was ignored, and the case of *Christian v. The State*, 96 Ala. 89, was reversed for refusing to give a similar charge. The principle of law involved and upon which the court proceeded in reversing these cases was fully recognized in the cases of *Lee v. The State*, 92 Ala. 15; *Harris v. The State*, 96 Ala. 24. It would be error to refuse such a charge when the facts and circumstances affimatively showed that no duty to retreat devolved upon the slayer, as where the party assaulted "was in his own house, or within the curtilage or space usually occupied and used for the purpose of the house," or in some cases of felonious assault. Where these conditions do not exist, and the defendant relies upon the law of self-defense a charge which ignores the doctrine of retreat should be refused. As was said in the case of *Holmes v. The State*, 100 Ala. 80, "there can not be a necessity to kill, where there is a safe way to retreat open to the slayer, available by the exercise of reasonable prudence." The statement of the facts in the *Keith Case*, reported in 97 Ala. 32, do not show that the assailant was excused from the duty to retreat; and under the facts, and the foregoing principles, the court did not err in refusing charge No. 2. The case of *Keith* was properly reversed for refusing to give charge number one, which charge contained every element of the doctrine of self-defense. From the brief consideration given to charge No. 2, in the opinion, and the authorities cited, it would seem that the only question raised by this charge, considered by the court, was whether the danger must be real, or whether "it is sufficient if the apparent danger is such as to create in the mind of a reasonable man a just apprehension of imminent danger to life or limb." I have felt justified in saying this much,

[Ezell v. The State.]

to prevent any misunderstanding of the decision in this case and in the *Keith Case.*

*Indictment for Murder.*

