(129 So. 708)

## TARWATER v. STATE.

### 6 Div. 722.

Court of Appeals of Alabama.
Aug. 19, 1930.

Charlie C. McCall, Atty. Gen., for the State.

SAMFORD, J.

The defendant, who was a police officer of the town of Parrish, killed a man by the name of Plylar. The record discloses three mistrials, and on the fourth trial defendant was convicted of manslaughter in the first degree and his punishment fixed at eighteen months' imprisonment in the penitentiary.

The record comprises 139 pages of typewritten matter setting forth the evidence in extenso, together with objections and exceptions to parts of the testimony, but no brief has come to the attention of the court.

The evidence for the state tends to prove that, while Plylar was quietly sitting in his automobile on the streets of the town, this defendant willfully and maliciously shot him to death. Per contra the evidence for defendant tended to prove that Plylar, who was a dangerous and bloodthirsty man when under the influence of whisky, was arrested on a charge of violating a town ordinance by defendant on the day preceding the killing and after arrest had given bond; that on the day of the fatal shooting deceased, his two sons and a woman, came to town about 10 o'clock in the morning, rode up and down the streets; that deceased and his sons were intoxicated; that defendant all this time was on duty as a policeman and saw deceased forty or fifty times: "Just

anywhere I (defendant) would be standing he (deceased) would drive up a piece and turn round and come back." "Everywhere I (defendant) would go they (deceased and his sons) would come around me." After the trains had run and had gone about four thirty in the afternoon, defendant testified: "I was standing out there talking to a negro. He and his boys came up and began talking to the negro. Hubert Musgrove came up about the time they did. Plylar asked the negro what church he belonged to and the negro said 'I am a Baptist.' He (the negro) says what church do you belong to Boss? He (Plylar) says, By God I am a hard shell. * * * I believe what is to be will be, I have got a tract of land over here and I'm going to build me a church on it and by God I'm going to start me a graveyard tonight. While he was saying that he was looking right at me and whittling towards me and I would step back to keep out of his way; he was cutting with his knife on something toward me." The evidence for defendant tended to prove that Plylar so conducted himself towards defendant during the entire day preceding the night of the fatal shooting in keeping with his reputation as a dangerous man as to intimidate the defendant in the discharge of his duties as an officer. The defendant should have been allowed to prove what Plylar said regarding the manner he treated officers.

Defendant should also have been allowed to prove that Plylar said during the day when defendant was requiring a bond of him, that he did not guess defendant knew him (Plylar), that he (Plylar) generally ran things around there. Under the facts as testified to by defendant's witnesses, the entire behavior of Plylar from 10 o'clock in the morning until the fatal shooting that night was admissible as being in the nature of threats directed at the officer. The average and proverbial "bad man" comes into town, fills himself with mean whisky; flaunts himself in the face of law and order; "talks big" in the presence of the officer and pointedly brings himself in contact with the policeman; he talks at, around, and to the officer that the officer may be impressed with his prowess, and swaggers from one end of the town to the other to the fear of many and disgust of all and in violation of the peace and dignity of the community, and that was what was indicated as the conduct of deceased by the testimony of the defense. What he does as indicating a baiting of the police and what he says as to what he generally did to officers, and that he generally ran things "around there," coupled with the belligerent acts testified to, were not only admissible as tending to require of the officer an exercise of his authority as the representative of civilized government, but were in the nature of threats on the part of Ply-

lar against the defendant and also tended to show Plylar's animosity towards defendant. The jury was entitled to this evidence that they might more intelligently pass upon the question presented by the plea of self-defense. Johnson v. State, 87 Ala. 39, 6 So. 400; Barnes v. State, 88 Ala. 204, 7 So. 38, 16 Am. St. Rep. 48; Gafford v. State, 122 Ala. 54, 25 So. 10; Powell v. State, 52 Ala. 1; Rutledge v. State, 88 Ala. 85, 7 So. 335.

■■ In the redirect examination of Hubert Musgrove, defendant's counsel sought to prove a conversation between this witness and defendant had just prior to the shooting, based upon a question asked by the state on cross-examination as to what defendant had said to him at that time and place. If the state had brought out a part of the conversation, the defendant would have been entitled to all of it, but we do not find in the record that the witness had testified to a part of the conversation. The mere asking of a question regarding a conversation to which no answer is given will not be a basis for the opposing party to call for all of such conversation.

There were other rulings on the admissibility of testimony to which exceptions were reserved, but as to these there was no error.

Charges requested by defendant in writing and refused by the court were either bad or were covered by the court in his oral charge.

For the errors of the court pointed out in the opinion the judgment is reversed, and the cause is remanded.

Reversed and remanded.