# Burton v. The State.

### *Indictment for Murder.*

1. *Service on defendant of lists of special and regular jurors in capital case.*—Under Acts, 1886–87, § 11, requiring the sheriff to serve on the defendant in a capital case a list of the special jury drawn to try the case, together with a list of the jurors drawn and summoned for the week, it is not a ground for quashing the venire that the list of regular jurors so served contained the names of jurors who were drawn but not summoned, because of their not being found, and which fact was not shown by the list served on the defendant.

2. *Acts 1886–87, § 11, not unconstitutional.*—Acts 1886–87, p. 157, § 11, providing that the sheriff shall serve a copy of the "special jury drawn to try" the case, together with a copy of the jurors drawn and summoned for such week, and a copy of the indictment, one entire day before the day set for trial, is an independent statute, and not an amendment of Cr. Code, § 4449, providing that a copy of the indictment, and a list of jurors summoned for the trial, including the regular jury summoned for the week in which the case is set for trial, shall be served on defendant, or his counsel, at least one entire day before the day of trial. Hence, it does not violate Const. Art. 4, § 2, relating to amendments.

[Burton v. The State.]

3. *Admissibility of confessions made to detective.*—Where a defend-
ant over fourteen years of age was indicted for murder, and while
confined in jail a detective deceived him into the belief that the de-
tective was under confinement on a similar charge, as well as other
grave charges, and that he was planning an escape which he assured
defendant of his ability to make good, and succeeded in acquiring
the defendant's entire confidence, and thereby obtained a confession
from the defendant, such confession was properly admitted before
the jury to be given such weight as in their judgment the circum-
stances warranted.

4. *Confessions made to persons known to defendant.*—Confessions
made to persons who were known to defendant, and who testified
that neither persuasion, promises, nor threats were used in obtaining
them, are *prima facie* admissible.

5. *Facts corroborative of statement of witness that a confession was
made.*—Facts discovered in consequence of confessions, show the
truth of the confessions, but do not show they were freely and volun-
tarily made; but facts which were already known to a witness, testi-
fying to confessions of a party as having been made relative to such
facts, cannot be considered as corroborating the witness that the con-
fessions were in fact made.

6. *Admissibility of letters in defendant's handwriting found on person
of deceased.*—Letters found in the pocket of deceased, proved to be in
the handwriting of defendant, together with testimony that on the
day of the murder written communications passed from defendant to
deceased, relative to a matter that defendant desired should be kept
concealed are admissible on a trial for murder.

7. *Testimony that defendant "looked paler than usual" admissible.*—It
may be shown, on a trial for murder, that defendant "looked paler
than usual" a short time after the shots which were supposed to have
caused deceased's death were heard.

8. *Circumstantial evidence.*—On a trial for murder, testimony that
defendant endeavored to get deceased's brother to meet him, with his
father's pistol, supplemented with testimony that defendant urged
deceased to get the pistol, and that after the shooting defendant had
the pistol in his possession, and after the murder the pistol could not
be found, is admissible.

9. *Declarations of defendant after homicide.*—Where, on a trial for
murder, defendant stated that he would not tell who killed deceased,
but would write his name, and thereupon wrote a name (not his own)
on a piece of paper, such paper was admissible.

10. *Map of locality of homicide, admissible before jury.*—A map
showing the place of the homicide with substantial accuracy, and re-
ferred to by both sides during the trial, may properly go to the jury.

11. *Exception to document not made part of record will not be reviewed.*
An exception to the submission of a certain map to the jury can not
be reviewed where the map was not made part of the record.

12. *Admissibility in evidence of bullets fired from defendant's rifle at*

*time of homicide.*—Where on a trial for murder, there was evidence tending to show that, immediately prior to the murder, deceased, with a pistol, and defendant, with a rifle, were shooting at a mark on a tree; that, on the same evening, defendant was seen with a rifle, and confessed that he shot deceased three times with the rifle, the bullets extracted from the tree were admissible, and also evidence showing the depth of their penetration into the tree and their location as to the mark.

13. *Charge as to 'formed design.'*—On a trial for murder, a charge that, if the jury believe from the evidence, beyond a reasonable doubt, that defendant induced deceased to go with him to a secluded place, and that defendant there shot and killed him, and that he did the act with formed design, they should find defendant guilty of murder in the first degree, is erroneous; the words "with formed design" not being equivalent to "willfully, deliberately, maliciously, and with premeditation."

14. *Charge as to belief of jury.*—A charge authorizing a conviction on the mere belief of the jury, instead of requiring them to be satisfied beyond a reasonable doubt, is erroneous.

15. *Admissibility of confessions is for the court, their weight for the jury.*—Whether or not confessions were "voluntarily" made is a question for the court, and their truth and weight for the jury. but the jury may determine that the confessions are untrue, or not entitled to any weight, upon the ground that they were not voluntarily made.

16. *Charge as to alibi.*—It is error to refuse to charge that, if defendant was at another place at the time of the homicide, he should be acquitted, where evidence was introduced tending to establish an *alibi.*

17. *Charge as to measure of proof.*—On a trial for murder, it is proper to charge that, "before the jury can convict defendant, they must be satisfied to a moral certainty, not only that the proof is consistent with defendant's guilt, but that it is wholly inconsistent with every other rational conclusion; and, unless the jury are so convinced by the evidence of the defendant's guilt that they would each venture to act on that decision in matters of the highest concern and importance to his own interest, then they must find the defendant not guilty."

APPEAL from the Circuit Court of Calhoun.

Tried before the Hon. GEORGE E. BREWER.

The appellant, Joe Burton, was indicted by the grand jury of Cleburne county, at the spring term, 1895, of the circuit court of said county, for the murder of Jethro Evans. At the same term, the defendant moved for a change of *venue*, upon certain grounds alleged in his motion. This motion was granted, and the cause was removed to the circuit court of Calhoun county, and

[Burton v. The State.]

upon the trial of the cause by said court at the spring
term 1895, the defendant was convicted of murder in the
second degree, and sentenced to imprisonment in the
penitentiary for ten years.

Before entering upon the trial of said cause, the de-
fendant moved the court to quash the *venire* of jurors
summoned for the trial upon the following grounds, to-
wit:  (1.) A true copy of the list of jurors summoned
for his trial was not served on him or counsel appearing
for him one entire day before the day set for his trial.
(2.) A true copy of the list of jurors composing the reg-
ular jury summoned for the week in which his case is
set for trial, and of the jurors summoned for his trial
was not served on defendant, or on counsel appearing
for him, one entire day before the day set for his trial.
(3.) The entire list of special jurors drawn in addition
to the regular jurors for the week for which his trial
was set, amounting to fifty persons, was served on the
defendant except said regular jurors summoned for the
week, and yet the defendant avers and shows unto the
court that ten of said jurors drawn in said *venire* were
not in fact summoned, the return of the sheriff on the
original showing they were not found, and the fact of
said ten jurors not being found or summoned was not
shown on the alleged copy served on the defendant.
(4.) The copy of the *venire* showing the regular jurors
drawn for the week of the court for which this defend-
ant's trial is set, omits and fails to show the names of
the persons, to-wit, W. Halcomb, Isaac Murphy and N.
G. Hudson, who were on the *venire* for said week of said
court, but, not having appeared, were not included in
the juries for said week of said court, as the same were
organized.  On the hearing of said motion, it was shown
to the court that the defendant had one entire day before
the day set for his trial been served with a copy of the
indictment, against him, together with a list of the fifty
jurors drawn specially for his trial, and of the persons
who were drawn and summoned as jurors for the week,
set for said trial, and that ten of said fifty special
jurors had not been summoned by the sheriff, which
fact the copy served on the defendant did not show,
also that the copy served on the defendant did not con-
tain the names of the three jurors mentioned in the
motion as above set out, as having been on the *venire*

for said week of said court, and who were drawn as jurors for said week, but were not summoned by the sheriff as such. The motion to quash the *venire* was overruled by the court, and the defendant duly excepted.

The evidence introduced in the trial of the cause, as is shown by the bill of exceptions, showed that the homicide was committed on the evening of the 24th of January, 1895, within a short distance of the town of Edwardsville, in Cleburne county; that the defendant was arrested on the same evening about 9 o'clock, and placed in jail; that the deceased was the son of the sheriff of said county, about 20 years old, and that the defendant was 15 years old on April 1, 1895. The circumstances and surroundings of the defendant at the time he was making certain alleged confessions, are sufficiently stated in the opinion. These confessions were different as testified to by the several witnesses. Some of the witnesses testified that the defendant said to them that he and the deceased were in the woods shooting at a mark, he with a rifle, and the defendant with a pistol; that as he stepped to the tree on which was a mark, to see how near he came to hitting the mark, and while his back was turned towards the deceased, he heard a shot, and turning around saw the deceased fall. Another witness testified that upon his asking the defendant who killed Jethro Evans, he said that he would not tell who killed him, but would write it, and that thereupon he wrote upon a piece of paper, which was handed him by the witness, "A. Vaughan."

The detective, who was introduced as a witness, testified, among other things, that the defendant confessed to him that he killed the deceased, Jethro Evans. The defendant separately excepted to the testimony of the several witnesses testifying as to the confessions made by the defendant, upon the grounds, 1st, that they were not shown to be voluntary; 2d, that they were extorted by duress; 3d, that they were made while the defendant was imprisoned by the sheriff, who was prosecutor; and 4th, they were obtained by questions asked, and were not voluntarily made. The several objections of the defendant to the testimony of each of the witnesses, in reference to the confessions alleged to have been made, were separately overruled, and the confessions were allowed to go to the jury, and to each of these sep-

arate rulings the defendant separately excepted.

It was shown that the defendant and the deceased were schoolmates, and had attended school on the day of the homicide. The State introduced as witnesses several of the schoolmates of the defendant and the deceased, and these witnesses testified that during the day several notes had been exchanged between the defendant and the deceased during school hours, and that the defendant enjoined upon the deceased to say nothing about them. After the body of the deceased was found there was taken from one of his pockets three notes, and these notes were shown to the school mates of the defendant while being examined as witnesses, and upon their testifying that they were familiar with the defendant's handwriting, and that in their opinion these notes were written by the defendant, the State offered them in evidence. The defendant objected to the introduction of said notes in evidence, and duly excepted to the court's overruling his objection. The other rulings of the court upon the evidence are sufficiently stated in the opinion, and it is deemed unnecessary to further set out in detail the manner in which the several exceptions were reserved thereto by the defendant.

The defendant introduced evidence tending to show that at the time of the killing, as shown by the testimony of the State's witnesses, the defendant was not at the place of the killing, but was at home assisting in work about the place.

Upon the introduction of all the evidence, the court, at the request of the solicitor, gave to the jury among others, the following written charges: (11) "If the jury believe from the evidence, beyond a reasonable doubt, that the defendant induced Jethro Evans to go with him to a secluded place, and that defendant there shot him with a gun or pistol and killed him, and that he did the act with formed design, and that it occurred in Cleburne county, Alabama, and before the finding of this indictment, you should find the defendant guilty of murder in the first degree." (14) "When the *corpus delicti* is proved, independent of the prisoner's confessions, an extra judicial confession, establishing the criminal agency of the defendant, if believed by the jury, will authorize a conviction." (28) "When confessions made by the defendant are admitted in evi-

8

dence by the court, if the jury believe the confessions are true, they cannot disregard them, although they may believe they were not voluntarily made.'' The defendant separately excepted to the court's giving each of the charges requested by the solicitor, and also separately excepted to the court's refusal to give each of the written charges requested by him, among which were the following: (13) ''If the State has failed to show any motive for defendant to have murdered deceased, and if the defendant has shown that he was at home when deceased was shot, then the jury must find the defendaut not guilty.'' (15) ''The court charges the jury that if the State has failed to show any motive for the defendant to have murdered Jethro Evans, and if the State has failed to so convince each and every juror by the evidence that defendant was present at the scene of the homicide, and not at his home, and to do this to that degree of certainty that they would each of them venture to act upon that conviction in matters of· the highest concern and importance to his own interest, then the jury must find the defendant not guilty.'' (46) ''Before the jury can convict the defendant, they must be satisfied to a moral certainty, not only that the proof is consistent with the defendant's guilt, but that it is wholly inconsistent with every other rational conclusion, and unless the jury are so convinced by the evidence of the defendant's guilt that they would each venture to act upon that decision in matters of the highest concern and importance to his own interest, then they must find the defendant not guilty.'' (67) ''The court charges the jury that they are the final judges as to whether the confession, as testified to by Lawrence P. Evans, the State's witness, was voluntary or not.'' (68) ''The court charges the jury that in passing on the credibility of the statement made by the defendant, as testified to by witnesses for the State, they may take into consideration the circumstances under which they were made, and if the jury believe from the evidence before them that said statements were not freely, voluntarily and intelligently made, then the jury should reject them as wanting in credibility, and as not entitled to weight in passing on the guilt or innocence of defendant.''

JAS. B. AIKEN and R. B. KELLY, for the appellant.—

A confession is not admissible because it may have corresponded with facts in the case, *previously* discovered.

It is only when facts are discovered, *in consequence* of the admission or confession that makes it admissible.

This is expressly decided in *Nelson v. State*, 14 (Tex. Court of App.) 474 S. C.; 46 Am. Reps. 247, with extended notes referring to several Alabama Cases, pp. 253–260.

No case can be found where confessions to an officer while *he was prosecutor* and having custody of the defendant, have been received.—*Newman v. State*, 49 Ala. 9.

Chief Justice Gibson says, in the case of *Com. v. Harman*, 4 Barr. 269, that the administering of *an oath* by the magistrate to the defendant in that case, under the circumstances was a *gross outrage.* See Roscoe's Cr. Ev. (7th Ed.) p. 43 note.

The evidence of the *detective* is not admissible.

See the case of the *People v. Kurtz,* 42 Hun., where the *district attorney* and a *"detective,"* by misrepresentations and keeping the defendant away from friends and attorneys, obtained confessions which were held inadmissible.

Also a case where a detective obtained a confession while the party was under arrest, etc., which was admitted by a divided court.—*Heidt v. State*, 20 Nebraska, 492, S. C.; 57 Am. Reps. 835, with note.

In this note is printed in full the dissenting opinion of Moore, Judge in the case of the *People v. Barker*, Mich. supreme court, 27 N. W. Rep. 549, in which he condemns, in fitting terms, such practices as is brought to light in this record. See next the celebrated case of *Brooks alias Maxwell v. State*, 92 Mo. 542.

That was not as *bad* as the case at *Bar.* The *Sheriff* in that case is not shown to have known anything of the *false charge.*

In this case the sheriff makes himself *public prosecutor,* has the custody of the defendant, sends off and employs a kinsman as a *detective,* and puts him in jail with the defendant, without any charge against alleged *detective.*

The sheriff's duty as a sworn officer, compelled him to keep the defendant safely and *protect* him from anything of this kind. See on this point the two dissenting opinions of Sherwood, Judge, in the case above referred to, 92 Mo., on pp. 597–8, and on p. 607.

The notes alleged to have been written by defendants,

[Burton v. The State.]

were inadmissible. They were not sufficiently identified and the handwriting not sufficiently proven.

Besides the *possession* of the notes, since they were alleged to have been taken from the body of deceased, was not accounted for.

It was not shown that they had not been changed since that time.

The burden was on the state to show they were in the same condition, as when taken from the body.

The same remarks apply to the admission of the alleged bullets.

A "formed design" to take life is not the equivalent of the "deliberation and premeditation," which are elements of murder in the first degree, but may exist in a case of self-defense or excusable homicide, and a charge which uses the terms as synonymous, or of equivalent meaning, is not correct.—*Hornsby v. State*, 94 Ala. 55. Charge 17 asked by State is erroneous. Clark's Manual, § 490.

Charge 14 for the State is erroneous, *"If believed by the jury," is not strong enough.* In *Rhea v. State*, 100 Ala., p. 119 and 121 the court says *"believing"* from the testimony that the facts exist, is not enough. The belief must be so strong, as to leave no reasonable doubt of its truth. Such is the rule in criminal cases. See *Pierson v. State*, 99 Ala. 148; *Heath's Case*, 99 *Ib*. 179; *Harris v. State*, 100 *Ib*. 120.

On motion to quash the venire see *Thomas' Case*, 94 Ala. 74; *Ryan's Case*, 100 *Ib*.; Code, 1886; § 4449.

Sec. 11 of Act 1886–7, p. 134, Criminal Code, is unconstitutional.

*Stewart v. Co. Commr's.*, 82 Ala.; *Bay State v. Co. Commr's.*, 87 Ala. 376; *Judson v. City of Bessemer*, 87 Ala. 240; *Bornhill v. Teague*, 96 Ala. 207; *Miller v Berry*, 14 So. Rep. 209.

Sec. 11 of said Act not clearly expressed in title of Act.—*Ballentyne v. Wickersham*, 75 Ala.

Defendants charge No. 13 is certainly the law in this case. If he did the murder at all, he did it *in person*. He was not accessory *before* the fact. He did not do the act through any one else. The evidence showed he could not have killed defendant while he, defendant, was at home.

SYDNEY J. BOWIE for the appellant.—There are several grounds of the motion to quash, each is in writing, but the principal point is that the sheriff should have served the list which had been summoned rather than the list which had been drawn. That there is a material distinction between the terms "drawn" and "summoned" is quite apparent and has been decided by this court in *Ryan v. State*, 100 Ala. 105, and *Thomas v. State*, 94 Ala. 74. In these cases it appeared that the record was silent as to whether the motion to quash the *venire* was made before or after entering upon the trial, but since the record was silent on this point, the court would not presume error, and hence there was no reversal on this point. In this case, however, the record affirmatively shows that the motion to quash the venire was made before entering upon the trial.

Sec. 4449 of the Criminal Code has never been expressly, nor impliedly, repealed or amended. And if I am correct in this proposition, then the *venire* would certainly have to be quashed under the principle decided in the Ryan and Thomas cases *supra*.

It is contended, however, that this section of the Code was amended or changed by the latter portion of Section 11 of "An act to more effectually secure competent and well qualified jurors in the several counties of this State", with the exception of certain counties, not material to be referred to since Calhoun is not one of the excepted counties.

This act was published in Pamphlet Acts of 1886-87 pages 151,157.The material portion of this section is as follows : "And if the sheriff shall serve a copy of the special jury drawn to try the said case, together with a copy of the jurors drawn and summoned for such week, together with a copy of the indictment, one entire day before the day set for the trial, that it shall be held a compliance with the law requiring a copy of the jury and indictment to be served on the defendant as hereinbefore provided".

I respectfully submit that this section cannot have the effect either of amending or repealing Section 4449 of the Code above referred to.

If it could be considered as having the effect of amending that section or if it could be referred to that section, it is plain that the purpose was to provide for the ser-

vice of the copy of the special jury which was drawn instead of the special jury which was summoned, as provided by the Code. But can it have such effect? Can it have any effect? Section 2 Article 4 of the Constitution provided that "each law shall contain but one subject which shall be clearly expressed in its title and no law shall be revived, amended or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revived, amended, extended or conferred, shall be re-enacted and published at length".

Section 11 of the act above referred to violates this constitutional provision in at least two important particulars, if it have the effect claimed for it. In the first place it relates to a subject matter which is not clearly or otherwise expressed in the title. The provisions of the code relative to drawing juries and their qualifications etc., are found in Chapter 4 of the Criminal Code which begins with Section 4299. The act to more effectually secure competent and well qualified jurors in the several counties of the State, was evidently intended to change and amend the law as found in this chapter of the Code.

The codifiers evidently so construed it since they published this act in full as a note to section 4299.

Section 4449, however, is found in the 9th chapter of the Code, the subject of which is the trial and its incidents and it is manifest that the two chapters treat of entirely different subjects. The object of section 4449 was first to inform the defendant certainly of the charge against him by serving him with a copy of the indictment, and secondly, to serve him with a list of the jurors who were summoned for his trial, including the regular jurors for the week, so that he might inform himself in regard to the jurors who were actually to try his case and thus intelligently use the challenges which the statute gave him.

There is nothing in section 4449 which relates directly or otherwise to securing competent and well qualified jurors which is the subject-matter of the special act in question. It is needless to cite the very numerous decisions of this court construing this clause of the constitution. It is probable that this clause of the constitution has been more before the court than any other. One of

the leading cases is that of *Valentine v. Rickersham*, 75 Vla. 533, to which we refer.

That the act is also in conflict with the latter clause of the constitutional provision above quoted, seems to be very evident. If it does not attempt to revive, amend, extend or confer the provisions of section 4449 without re-enacting or republishing it at length it is difficult to conceive what office it is to perform at all. The last words of section 11 are these, "As hereinabove provided." There is nothing thereinbefore provided which at all provides for serving a copy of the jury and indictment on the defendant. There is no provision of law other than section 4449 which requires a copy of the indictment and the list of the jury summoned, to be served on the defendant and hence if it have any meaning at all it must relate to this section 4449; but it fails because it does not re-enact and republish this section of the Code at length. The object and purpose of this constitutional provision, is that every act shall be complete in itself; in other words, it must be able to stand alone, so that the members of the legislature especially in voting on it may know what they are voting for without being forced to the necessity of looking up the other law which was sought to be amended by a reference to it. Can this provision stand alone? This is the test. In the first place there is a direct reference to some other law in the last clause of the section. Eliminate this reference and what would become of the provision? It would be incomplete and would not make sense as shown by the following quotation : "If the sheriff shall serve a copy of the jury drawn to try the case together with a copy of the jurors drawn and summoned for such week together with a copy of the indictment one entire day before the day set for trial." It is thus apparent that the clause is meaningless and ineffective unless aided by the last clause of the section, as follows : "That it shall be held a compliance with the law requiring a copy of the jury and indictment to be served on the defendant as hereinabove provided ;" but there is no other provision than this in the statute and this clause certainly does not re-enact and republish at length section 4449 of the Code ; in the first place there is no law requiring a copy of the jury to be served on the defendant whatsoever. It would be impossible to serve a copy of the jury since

[Burton v. The State.]

there are no two alike.  Of course it is meant by this to refer to a list of the jury, but it does not say so.  The distinction between Sec. 4449 and Sec. 11 of this special act is, that the Code provision makes it mandatory that a copy of the indictment and the list of the jurors summoned for his trial, including the regular jurors summoned for the week, must be served on him; whereas in section 11 there is no provision at all requiring this to be done.  The utmost that can be said is that it provides if the list of the jurors drawn is summoned, etc., that it shall be held a compliance with the law.  It is not therefore made mandatory but is optional.  Under this section the sheriff cannot be required to serve a copy of the indictment and list of the jurors on the defendant. He is only required to do so by the provisions of the Code and the sole and only office that section 11 could perform, if any at all, would be to amend the Code; that it cannot be done in this manner has been so often decided by this court as to make it unnecessary to say more on the question.—*Rogers v. Torbett*, 58 Ala. 523; *Stewart v. Commrs.*, 82 Ala. 209; *Judson v. City of Bessemer*, 87 Ala. 240; *Road Company v. O'Donnell*, 87 Ala. 378; *Stewart v. State*, 13 So. Rep. 943; s. c., 100 Ala. 1; *Miller v. Berry*, 14 So. Rep. 655.

Wm. C. Fitts, Attorney-General, for the State.—The motion to quash venire is not good in any of its grounds. The copy of the venire with a list of the regular jury *was served* on the defendant one entire day before trial.  This fact disposes of grounds one and two.  The third ground is equally without weight.  The fact that the sheriff returned ten of the jurors on the venire as "not found" and that the fact was not mentioned in the copy served on defendant, is no ground for quashing.  Defendant was not injured and cannot be heard to complain. *Murphy v. The State*, 86 Ala. 45; *Bales v. The State*, 63 Ala. 30.

It was not necessary to include in the list of the regular jurors the three persons who had been drawn but had not been summoned by the sheriff.  The statute does not require it.—Code of 1886, § 4449; *Floyd v. The State*, 55 Ala. 61; *Lee v. The State*, 55 Ala. 259; *Shelton v. The State*, 73 Ala. 5; *Posey v. The State*, 73 Ala. 490.

The various exceptions reserved to the testimony ex-

[Burton v. The State.]

hibit no reversible error. The majority of exceptions were taken to the ruling of the court as to the admission of certain declarations or statements made by defendant while in jail, on the general grounds that they were not shown to be voluntary, that they were obtained under duress, that they were "inadmissible and incompetent." Before any answer had been made to the solicitor in response to his questions, the court sent the jury out and satisfied itself that the statement was voluntary, made under no influence or hope of reward or fear of punishment, and that no promise or inducement had been held out to the defendant. These same objections were taken all through the trial by defendant in the examination of the several witnesses and are reserved in the bill of exceptions. In addition to the authorities cited in accompanying brief, see the cases of *Dodson v. The State,* 86 Ala. 60 ; *Hornsby v. The State,* 94 Ala. 55; *Goodwin v. The State,* 15 So. 571.

The introduction of the map to the jury in evidence was not error. It was shown by the county surveyor to be correct substantially in all respects, and exhibited very accurately the relative distance and positions of the places. It was used by witnesses on both sides for the purpose of illustrating their evidence, and no objection was interposed until it was desired to give it to the jury. *Bridges v. McLendon,* 56 Ala. 335 ; *Clement v. Pierce,* 63 Ala. 284 ; *Humes v. Bernstein,* 72 Ala. 546 ; *E. T., V. & G. R. R. v. Watson,* 90 Ala. 45. See opinion in Wilkinson case, 1 Div., No. 863 (Mss.) rendered by Haralson, J., at this term of court.

MERRILL & BRIDGES, assisting the Attorney-General, for the State.—The statute requires that in capital cases the defendant shall, one entire day before the day set for trial, be served with a copy of the special jury *drawn* to try his case, and also a list of the jurors *drawn and summoned* for the week in which the case is set for trial. Code, p. 134, § 11 of note.

A confession which is affirmatively shown to have been made voluntarily, though made while the defendant was under arrest, and in response to questions propounded by the officer having him in custody, is admissible in evidence.—*Spicer v. The State,* 69 Ala. 159 ; *Minaka v. The State,* 55 Ala. 47 ; *Redd v. The State,* 68

Ala. 492; *Maull v. The State*, 95 Ala. 1; 1 Green. on
Ev., § 229.

A confession obtained by artifice or deception, but
without the use of promises or threats, is admissible.—
*Presley v. The State*, 59 Ala. 98; *Stone v. The State*, 17
So. Rep. 114; *King v. The State*, 40 Ala. 314; 1 Green.
on Ev., § 229.

Involuntary confessions are admissible when corrobor-
ated by extraneous facts which show they are true.—
*Murphy v. The State*, 63 Ala. 1; 3 Am. & Eng. Enc. of
Law, p. 481; 1 Green. on Ev., § 231.

When the corpus delicti is proved by other evidence,
an extra judicial confession by the defendant, establish-
ing his criminal agency, if believed by the jury, will
authorize a conviction.—*Young v. The State*, 68 Ala. 569;
*White v. The State*, 49 Ala. 344; *Mose v. The State*, 36
Ala. 211.

Absence of proof of motive for the commission of the
crime by the defendant is no reason for an acquittal.—
*Stone v. The State*, 17 So. Rep. 114; *Hornsby v. The State*,
94 Ala. 56; *Salm v. The State*, 89 Ala. 56; *Cross v. The
State*, 68 Ala. 476.

Malice is presumed from the use of a deadly weapon;
and the burden of rebutting this presumption is on the
slayer, unless the evidence which proves the killing re-
buts it.—*Wilkins v. The State*, 98 Ala. 1; *Hornsby v. The
State*, 94 Ala. 55; *Webb v. The State*, 100 Ala. 47; *Ex
parte Warwick*, 73 Ala. 57.

When a defendant in a criminal prosecution, inter-
poses the defense of an alibi, the burden is on him to
establish the alibi to the reasonable satisfaction of the
jury.—*Prince v. The State*, 100 Ala. 144.

The term, "Formed Design," embraces all the ele-
ments of murder in the first degree.—*Mitchell v. The
State*, 60 Ala. 26; *Lang v. The State*, 84 Ala. 1; *Floyd v.
The State*, 82 Ala. 16; *Ex parte Sloan*, 95 Ala. 22; *Ex
parte Warwick*, 73 Ala. 57; *Karr v. The State*, 17 So.
Rep. 328.

COLEMAN, J. — The defendant was convicted of
murder in the second degree. Before entering upon the
trial he moved the court to quash the venire. The
statute provides that "if the sheriff shall serve a copy of
the special jury drawn to try said case, together with a

[Burton v. The State.]   ·

copy of the jurors drawn and summoned for such week, together with a copy of the indictment one entire day before the day set for the trial, that shall be held a compliance with the law requiring a copy of the jury and indictment to be served on the defendant, as hereinbefore provided."—Acts of 1886–7, p. 151, Sec. 11.  The record and bill of exceptions show, that the orders of the court, and the *venire* served upon the defendant, were in compliance with the statute.  The sheriff is required to serve a copy of the special *venire drawn*, together with a copy of the jurors *drawn and summoned* for the week, upon the defendant.  The act makes a distinction between the regular jurors for the week and the jurors drawn specially to try the case.  As to the latter, a copy of the jurors *drawn* is to be served, while as to the former, a copy of the jurors *drawn and summoned* is to be served.  The reasons for the distinction are obvious, and any other rule would result in delay and confusion.

It is contended that section 11 of the act of February, 1886–87, *supra*, is obnoxious to Section 2, Article 4 of the Constitution.  This argument is based upon the provision of Section 4449 of the Criminal Code, which provides "that a copy of the indictment and a list of the jurors summoned for his trial, including the regular jury summoned for the week in which his case is set for trial, must be served on him, or on counsel appearing for him, at least one entire day, before the day set for his trial."  The section of the Code provides for the service of a copy of the list of jurors *summoned* for his trial, while the act provides for the service of a copy of the special *venire* drawn, for his trial.  The act of 1886–87 was intended, as its title and provisions clearly show, to provide a complete system in and of itself for securing competent and well qualified jurors, and without reference to other existing statutory provisions affecting the matters provided for by the statute.  Its title is very comprehensive.  All the subjects of the statute are "referable and cognate" to that expressed in the title.— *Ballentyne v. Wickersham*, 75 Ala. 533 ; *Tatum v. The State*, 82 Ala. 5.  It was not the purpose of the statute of 1886–87, *supra*, to revive or amend any existing law, or to extend or confer the provisions of an existing law, but to provide a system complete of itself as far as its provisions go.  A statute of this character, and having

[Burton v. The State.]

this effect, is not obnoxious to the Constitution. The motion to quash the *venire* was properly overruled.

The principal exceptions reserved upon the ruling of the court during the progress of the trial, relate to the admissions of the confessions of the defendant. It is insisted that the confessions testified to, if made, were made under circumstances which show, that they ought not to have been admitted against the objections of the defendant. The defendant, a youth not quite fifteen years of age, was arrested on a warrant charging him with the murder of Jethro Evans, the son of the sheriff of the county, and by him placed in jail. The sheriff was absent for a few days, attending the burial of his son, and in the meantime, the jail and prisoners were left in the custody of his deputy, who it seems was also a son. No one, not even the prisoner's counsel or his father, were allowed access to him during the absence of the sheriff. His father saw him on the night of the arrest, and cautioned him against speaking of the matter with which he was charged. It appears that the sheriff had employed counsel to prosecute the defendant. Questions in regard to the killing were plied to the defendant. A detective was also put in jail by the sheriff, and who deceived the defendant as to his real character. Some of the confessions as testified to were made, in the interim before counsel were admitted to the jail, and before the detective was employed; others subsequent to the admission of counsel and of the detective. The record shows affirmatively that there were no promises of favor nor inducements held out to obtain the confessions, nor was there persuasion, or compulsion or threats or cause to produce fear, other than arose from the surroundings. It is insisted that the youth of the defendant, his imprisonment, the prohibition of access to him, the deceit practiced by the detective, and the fact that the sheriff, who was prosecuting the case, had him in charge, all being considered, are sufficient to raise the presumption that the confessions were involuntary and not admissible. All of these conditions did not exist as to all the confessions admitted, but all did exist as to some of the confessions, and the question is, whether there is reversible error, as to the admission of any of the confessions. The testimony of the detective is most strenuously resisted. We will consider that first. The

[Burton v. The State.]

defendant was over fourteen years of age, and criminally responsible. The detective was an entire stranger to him. If the evidence of this witness is to be believed, the defendant supposed he was a murderer and confined in jail on a charge similar to the one against the defendant, and that there were other grave charges against witness. The detective was planning an escape, and assured the defendant of his ability to make it good. He seems to have acquired the entire confidence of defendant. This may have been the more easily accomplished, because of the youth and unsuspecting character of the defendant, but the question for consideration is whether the confessions were voluntary. The fact that the defendant was deceived, does not in the least tend to show that his statements in regard to the killing of Evans were induced by hope or fear, or calculated to elicit an untrue statement. What weight, if any, a jury would give to the testimony of the detective, or confessions elicited under such circumstances, rests wholly with them. We do not think the court erred, in holding that they were competent for the consideration of the jury.

The other witnesses who testified to the confessions of the defendant were well known to him. They swear affirmatively that neither persuasion, promises, nor threats were used. *Prima facie* they were admissible. The credibility of the witnesses, their bias, if any, relationship to the deceased, the truth of the confessions themselves, the weight to be given to them, were questions to be considered and determined by the jury under the circumstances. Facts discovered in consequence of confessions, show the truth of the confessions, but do not show they were freely and voluntarily made; but facts which were already known to a witness, testifying to confessions of a party as having been made relative to such facts, can not be considered as corroborating the witness that the confessions were in fact made. If the jury believe the confessions were in fact made as testified to, and the confessions state facts, which are proven to be true, independent of the confessions, such evidence tends to show, that the confessions were knowingly, intelligently and truly made.

We are of opinion that the confessions of the defendant were properly admitted, and our conclusion is supported by the following authorities: *Hornsby v. The*

*State*, 94 Ala. 64, and authorities; *Goodwin v. The State*, 102 Ala. 87; *Young v. The State*, 68 Ala. 569, dissenting opinion; *Redd v. The State*, 68 Ala. 498; *Murphy v. The State*, 63 Ala. 1; *Gregg v. The State*, 17 So. Rep. 321.

The notes found on the body of deceased were properly admitted in evidence. The hand-writing of the defendant was sufficiently proven to authorize their admission. In addition, there was independent evidence of written communications passing from defendant to deceased during school hours, in regard to a matter, that defendant desired should be kept concealed from others. The court did not err in allowing the witness to testify that he saw the defendant, a short time after the gun shots were heard, which it is supposed resulted in the death of the deceased, and that he "looked paler than usual." This exception is not insisted on in argument. The theory of the State is, and there is circumstantial evidence tending to bear it out, that the defendant was seen going at a rapid pace from the place where the body of deceased was found, immediately after the firing was heard in that direction, and the witness testified that it was then he saw the defendant, and he "looked paler than common." The witness testified to a fact. Whether true or merely imaginary, and what weight, if any, should be given to it, rested purely with the jury. In the case of *Railroad Co. v. McLendon*, 63 Ala 266, and which was re-affirmed in the case of *Burney v. Torrey*, 100 Ala. 157; 14 So. Rep. 684, it was held that it was competent for a witness to testify that another "seemed to be suffering" that he "looked bad" that the testator "was childish," that "his expression was simple." That another "looked paler than common," carried a distinct fact to the minds of the jurors, can not be questioned, and is fairly within the influence of these decisions.

We are of opinion the court ruled rightly in admitting the testimony of the witness Leander Evans, who was a brother of the deceased, that the defendant endeavored on the same day to get the witness to meet him out with his father's (the sheriff) pistol. The notes of defendant to deceased introduced in evidence, urged the deceased to procure the pistol of his father and to meet him with it. The evidence tends to show that deceased did get the pistol from his father's trunk and met defendant according to appointment. There is evidence, which if

[Burton v. The State.]

believed, shows that after the shooting the defendant had this pistol in his possession. Up to the trial the pistol had not been found. The prosecution contends, that the fact, that deceased showed so much desire to get possession of the pistol, that he had possession of it after the killing of Jethro Evans, that it has been hidden since the killing of deceased, tends to show a motive for the act, and is also a criminating circumstance. It may or may not be entitled to much weight, but we think the evidence might properly go to the jury to be considered in connection with the other evidence.

There was no error in allowing the paper with "A. Vaughan" written on it to be introduced in evidence. According to some of the evidence, the defendant stated at one time, he did not kill deceassd, but saw the man who did; that he would not call his name, but would write it, and that he wrote "A. Vaughan" as the person.

There is an exception to the introduction of a map, which purported to show the place where the body was found, and many natural objects testified about during the trial, their relative directions and distances from each other and from the place of homicide. The map seems to have been used generally by both sides, without objection during the trial, and referred to by the witnesses as illustrating and explaining their testimony. There was evidence, also, showing that for the purposes for which it was used, it was substantially correct. Under these circumstances, the court did not err in permitting the map to go to the jury. We have said this much in regard to this exception more for the purpose of stating the rule, than as a decision upon the exception insisted upon. The bill of exceptions states that the map is found on page ——. The page is not given. There is no map which is made a part of the record. We find a loose map in the record not attached to it, nor a part of it. We can not properly review the exception.

Two bullets or balls taken from a tree near where the body was found, and also the hat worn by deceased with a gun shot hole in it were introduced in evidence, against the objection of the defendant. The objection is single and goes to the introduction of the hat and bullets. We have but recently decided the question as to the admissibility of the hat, and as the objection included both the hat and balls, there was no objection in overruling the

[Burton v. The State.]

motion. We are of opinion, however, that the bullets were properly admissible, as well as the evidence show-ing the depth of their penetration, and also the location of the balls to the mark, at which they were apparently fired. There was evidence tending to show that deceased carried his father's pistol to the appointed place, and that defendant had a rifle with him on the evening of the homicide and was seen with it as he returned home. Some of the confessions of the defendant, if believed to have been made, were to the effect that he and deceased shot at the mark, one using a rifle and the other the pis-tol. These facts tended to corroborate the facts stated by the defendant in his confessions, if the jury believed they were made, and were admissible on the same prin-ciple, that it was permissible to show that deceased had been shot three times, the gun shots taking effect as, and where, the defendant had confessed that he had shot deceased.

We find no error in the ruling of the court upon ques-tions of evidence.

We will next consider the ruling of the court giving and refusing such of the charges as we deem material. The record shows that the State requested over thirty charges and the defendant over eighty. We do not think it improper to say in this connection, that so many charges tend to confusion, rather than to secure a just verdict. If a jury is intelligent and honest, the insis-tence of the prosecution upon technical objections and finely spun distinctions of doubtful character, are not calculated to render a conviction more certain, and often lead to a reversal of a cause, where the conviction was proper upon the merits of the case and would have been as certainly rendered, had the objections been waived, and the doubtful distinctions not attempted. The State does not desire the conviction of any person, except upon the merits of the case, and by a verdict intelligent-ly rendered. If jurors have not a proper regard for the oath they have taken, and their duty to the public. tech-nicalities and charges of doubtful legality will have no influence upon them. It is much safer to rely upon the strength of the case upon its merits, and the intelligence and integrity of the jury, than technical objections and subtle distinctions.

We are of opinion the court erred in giving charge

eleven.   If the jury believed beyond a reasonable doubt
that defendant induced Jethro Evans to go with him to
a secluded spot, for the purpose of taking his life, *and*,
*in pursuance of such purpose or design*, killed him with a
gun or pistol, the offense would be murder in the first
degree.   A charge similarly defective as to the intent
was considered in the case of *Green v. The State*, 97 Ala.
59, 65.   In the charge, murder in the first degree, as a
conclusion of law, is predicated on the fact that the kill-
ing was done with formed design with a deadly weapon
in a secluded spot.   These are pregnant facts for the
consideration of the jury, but these facts do not raise
the conclusive presumption as matter of law, that the
offense was murder in the first degree.   The meeting in
the secluded spot may have been for a friendly purpose.
It was for the jury to say under all the circumstances.
If the defendant committed the act there is no known
eye-witness living other than himself.   The guilt of the
defendant depends upon circumstantial evidence and his
confession.   Where one intentionally kills another with
a deadly weapon, there is a formed design to kill and
the law presumes malice, unless the evidence which
proves the killing rebuts the presumption.   Whether
the "formed design" to take life is the offspring of the
elements that constitute murder in the first degree, that
is, willful, deliberate, malicious, and premeditated, or
from the facts which constitute murder in the second de-
gree, or from sudden passion upon sufficient provocation,
or from self-defense, is a question of fact for the jury
acting under the presumptions of law from the facts as
declared and instructed by the court —*Hornsby* case, 94
Ala. 55.   In either case, the "formed design" may exist
but a moment before the fatal act, but the character of
the offense is determined by the elements, which called
into existence the "formed design."

The fourteenth charge given was faulty, in that it
authorized a conviction upon the mere belief of the
jury, instead of requiring them to be satisfied beyond a
reasonable doubt.—*Whittaker v. State*, 17 So. Rep. 456.

Charge 28 given at the instance of the prosecution
and charges 67 and 68, refused to the defendant, will be
considered in part together,   These relate to the pro-
vince and power of the jury as to confessions after they
have been admitted by the court.   It is the established

law of this State, and that which prevails almost universally, that confessions of a defendant are not admissible against him, in a criminal prosecution, unless voluntarily made. Whether voluntarily made or not, we hold is a question of law to be determined by the court from the facts, as a condition precedent to their admission.—*Bonner v. The State*, 55 Ala. 242 and authorities; *Young v. The State*, 68 Ala. 569. Having been declared competent and admissible, they are before the jury for consideration. The jury have no authority to reject them as incompetent. But the jury are the sole judges of the truth and weight to be given confessions, as they are of any other fact. In weighing the confessions, the jury must take into consideration all the circumstances surrounding them, and under which they were made, including those under which the court declared as matter of law they were voluntary. In weighing confessions, the jury necessarily consider those facts upon which their admissibility, as having been voluntarily made, depends. While there is no power in the jury to reject the confessions as being incompetent, there is no power in the court to control the jury in the weight to be given to facts. The jury may, therefore, in the exercise of their authority and within their province, determine that the confessions are untrue, or not entitled to any weight, upon the grounds that they were not voluntarily made. The court passes upon the facts merely for the purpose of determining their competency and admissibility. The jury pass upon the same facts, and in connection with other facts, if there are other facts, in determining whether the confessions are true and entitled to any and how much weight. The court and jury each have a well defined and separate province.—*Young's Case, supra*. It follows, that although the jury may come to the conclusion that the confessions were not voluntary, yet if from extrinsic evidence or from their character and the circumstances, the jury are satisfied that they are true, the jury should act upon them. Being competent and the jury being satisfied beyond a reasonable doubt of their truth, the jury may very properly convict on such evidence. There was no error in giving charge 28. The statement in the opinion of the case of *Goodwin v. The State, supra*, that it is the "*duty*" of the jury to discard and reject the confessions altogether if they are of opin-

[Burton v. The State.]

ion that the confessions were not voluntarily made, although they may believe them to be true, is herein modified in so far as it conflicts with the opinion in the present case.

Charge 67 requested by defendant is not full enough. The jury consider whether confessions were voluntary in passing upon their weight, but the jury is not authorized to determine their admissibility. The charge was calculated to mislead.

Charge 67 was properly refused, as invading the province of the jury. It required the jury to reject the confessions absolutely, if in their opinion they were not voluntarily made. It was their duty to consider them and their province to give them such weight as they saw proper.

Charge numbered 13 requested by the defendant should have been given. Under the facts of the case, if the jury believed that defendant was at home at the time of the homicide, he was entitled to an acquittal. The charge requested was more favorable to the State, than the law demanded under the facts. For like reasons, charge 15 requested should have been given.

We are of opinion charge 46 should have been given. We find no objection to it.

We are not inclined to consider further in detail all the charges requested and refused. It would be discharging a burden not necessary for the administration of justice. Many of them, though intended to express legal propositions, are not drawn with care, and on account of their phraseology are misleading or argumentative; others are postively erroneous, while others single out facts and give them undue prominence. Some of the charges ignore the right of the jury to believe a part of the confessions and reject others. In fact the confessions testified to, in some instances are so contradictory, that the whole cannot be true.—*Riland's case.* 52 Ala. 322, 335.

For the errors mentioned, the judgment of the circuit court is reversed and the cause remanded.

Reversed and remanded.