# Brown v. The State.

### Levying Blackmail.

(Decided August 1, 1916. Rehearing denied September 7, 1916. 72 South. 757.)

1. **Criminal Law; Verdict; Several Counts.**—A verdict responding to only one count of several in the indictment operates as an acquittal as to the other counts.

2. **Threats; Blackmail; Indictment.**—Under § 6391, Code 1907, an indictment charging that defendant levied blackmail on a certain named person by threatening to make disclosures injurious to his character by publication, for the purpose of getting money from him, or other benefits contrary to law, etc., substantially follows the language of the statute, and is sufficient.

3. **Same; Evidence; Other Transactions.**—Where the state claimed a conspiracy between the two defendants to levy blackmail, and defendant admitted the receipt of money to be deliverd to the co-defendant, but claimed that it was for the expense of changing the type in a proposed newspaper article, it was competent to introduce evidence of similar transactions between defendant and others, as tending to give character to the act herein questioned, and the intent with which defendant acted.

[Brown v. The State.]

**4. Charge of Court; Directing Verdict.**—Where the evidence affords reasonable inferences in support of the charge, a defendant is not entitled to have the verdict directed.

**5. Threats; Blackmail; Instruction.**—Where the evidence tended to show that defendant and another were acting together in a general scheme of blackmail, defendant was not entitled to an instruction to find him not guilty unless the jury believed beyond a reasonable doubt that the money was paid to defendant as the result of his threat of publication of the newspaper article.

**6. Same.**—A charge that defendant could not be convicted on evidence that his alleged co-conspiracy admitted that he telephoned the victim and threatened him with publication of the proposed article, was properly refused as ignoring evidence of the conspiracy, as well as giving undue prominence to certain other evidence.

**7. Same.**—A charge predicating defendant's guilt upon his connection with the paper in which it was proposed to publish the blackmailing article, was properly refused.

APPEAL from Jefferson Criminal Court.

Heard before Hon. WM. E. FORT.

(Ed. Note—This case was reviewed by Supreme Court upon certiorari, and the writ denied. See *Brown v. State*, 198 Ala. 700, 73 South. 999.)

Jerome S. Brown was convicted of levying blackmail, and appeals. Affirmed.

The first count was as follows (omitting formal charging part):

Jerome S. Brown and J. T. Howle levied blackmail on Smith Cullom, Jr., by threatening to make a disclosure by publication injurious to the character of said Smith Cullom, Jr., for the purpose of getting money from said Smith Cullom, Jr., or other benefits, contrary to the statutes in such case made and provided.

The following are the charges marked refused to the defendant:

(E) Unless you believe from the evidence beyond a reasonable doubt that the money was paid to the defendant Brown as the result of the threat made by him that publication of the affray with which Smith Cullom, Jr., was connected, and which took place at what has been termed in the testimony "The Elms," your verdict should be not guilty.

(F) The defendant cannot be convicted on the evidence that J. T. Howle admitted or stated to Smith Cullom, Jr., after the transaction with Robert Thach in which the $100 was paid under the circumstances narrated in the evidence, that it was he (J. T.

Howle) who called the said Smith Cullom over the phone and told him about the publication of an account of the affray at The Elms with which the witness Smith Cullom was connected.

(G) Unless you believe from the evidence that defendant Brown was connected with the publication of the account of the affray with which Smith Cullom was connected at The Elms, you should find the defendant not guilty.

A. LATADY, and C. C. NESMITH, for appellant. W. L. MARTIN, Attorney General, and HARWELL G. DAVIS, Assistant Attorney General, for the State.

BROWN, J.—(1, 2) The appellant was convicted of the crime denounced by section 6391, Code 1907. The verdict responded to the first count only of the indictment, operating as an acquittal as to all other counts.—*Walker v. State*, 91 Ala. 32, 10 South. 30. Therefore the first count is the only one inviting consideration. The statute is not merely an affirmation of the common law, but creates a new offense. The provisions of the statute under which the first count of the indictment is framed are: "Any person who shall levy * * * blackmail on another, by * * * threatening to make * * * any disclosure, * * * by publication, injurious to the character of any person for the purpose of getting money or other benefit * * * must, on conviction, be punished by a fine not exceeding one thousand dollars, and may also be imprisoned in the county jail, or sentenced to hard labor for the county, not exceeding twelve months."

A comparison of the language of the statute with the averments of the indictment shows that it substantially, if not literally, follows the language of the statute and charges all the facts essential to constitute the offense. This, under the repeated rulings of the Supreme Court, is all that is required. The demurrers to the indictment and the motion in arrest of judgment were properly overruled.—*Wilson v. State*, 61 Ala. 151; *Smith v. State*, 63 Ala. 55; *Walker v. State, supra; Marshall v. State*, 120 Ala. 391, 25 South. 208; *Flake v. State*, 19 Ala. 551; *Sellers v. State*, 49 Ala. 357.

The state offered evidence tending to show that one Howle, for the purpose of obtaining money from Cullom, threatened to make a disclosure by publication of an article in the Searchlight,

a newspaper formerly owned and operated by defendant, but at the time owned and controlled by Howle, published in the city of Birmingham; that such article was calculated to injure the social standing of Cullom; and the state's evidence tended to show that the defendant was particeps criminis with Howle. The defendant does not deny that Howle proposed to make the publication, nor that Howle, as a result of the negotiations with Cullom's friends and agents, obtained the sum of $100 for the suppression of the defendant's name in the publication, and offered evidence tending to show that defendant was not personally interested in the transaction or connected with the proposed publication. He, however, admits that he was present during some of the negotiations, and that the money was turned over to him by Cullom's agents to be delivered to Howle. One contention of defendant was that the intent and purpose of the publication was the suppression of a place of vice by giving to the public intelligence as to the conduct of those who resorted to a place known as "The Elms," and not for the purpose of obtaining money from Cullom or any one else; and that the payment by Cullom was voluntary and for the purpose of reimbursing Howle the necessary expense incident to having the publication reset in type, dropping Cullom's name therefrom, and evidence was offered tending to support this theory of the defense. Otherwise stated, the contention of the state is that both the defendant and Howle were interested in the scheme; that a conspiracy was formed by them to use the facts within their knowledge as a means of gain by threatening to make public certain scandalous matter, with the criminal purpose and intent of extorting money, and that the transaction involved here is the result of a general course of conduct of these parties. On the other hand, the defendant's contention is that the purpose of the proposed publication was the suppression of vice. and that the money was paid by Cullom and accepted by Howle for the purpose and intent of reimbursing Hoyle for expenses incident to changing the type of the proposed publication.

(3) The issues not only involved the question of the intent of the proposed publication and defendant's guilty knowledge and connection therewith. but the intent of the parties in connection with the payment and acceptance of the money. This brings the case clearly within the exception to the general rule of evidence, admitting testimony of similar offenses for the pur-

pose of showing the criminal intent and illustrating and giving character to the acts of the defendant.—*McDonald v. State,* 83 Ala. 46, 3 South. 305; *Pearce v. State,* 40 Ala. 720; *Stanley v. State,* 88 Ala. 154, 7 South. 273; *Moore v. State,* 10 Ala. App. 179, 64 South. 520; Wigmore on Evidence, p. 352; Underhill, Criminal Evidence, 89. Under this exception to the general rule the court properly allowed the prosecution to show similar transactions of the defendant with others as tending to give character to his acts on the occasion under investigation and the intent with which he acted.

The bill of exceptions refers to several copies of the publication offered in evidence, but these copies are not made a part of the record or presented here so as to invite consideration of the appellant's objections to their admissibility as evidence.—*Gardner v. State,* 96 Ala. 14, 11 South. 402; *Burton v. State,* 107 Ala. 108, 18 South. 284; *Pitts v. State,* 140 Ala. 70, 37 South. 101.

(4) The evidence was sufficient to afford reasonable inferences sustaining the indictment, and the affirmative charge was properly refused.—*McWhorter v. State,* 9 Ala. App. 70, 64 South. 158; *Wright v. State,* 156 Ala . 110, 47 South. 201.

(5) Charge E was well refused, in view of the tendencies of the evidence that appellant and Howle were acting in concert in carrying out a general scheme of blackmail.—*Ferguson v. State,* 134 Ala. 63, 32 South. 760, 92 Am. St. Rep. 17; *State v. Talley,* 102 Ala. 69, 15 South. 722.

(6) Charge F, in addition to ignoring the tendencies of the evidence showing a conspiracy between appellant and Howle, is objectionable as pointing out and giving undue prominence to certain portions of Howle's testimony.—*Stone v. State,* 105 Ala. 60, 17 South. 114.

(7) Charge G was calculated to mislead the jury to believe that it was necessary to appellant's guilt that he be connected with the publication of the paper in which the publication was proposed to be made, and its refusal was free from error.

We find no error in the record and the judgment is affirmed.

Affirmed.