40 So.2d 641

**DYE v. STATE.**

**8 Div. 700.**

Court of Appeals of Alabama.

March 22, 1949.

Rehearing Denied April 12, 1949.

J. A. Posey, of Haleyville, and Travis Williams and Wm. Stell, both of Russellville, for appellant.

A. A. Carmichael, Atty. Gen., and Hugh F. Culverhouse, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

William Howard Cummings, Sr., the deceased named in the indictment, the evidence shows, was a man in the prime of life, thirty four years of age and weighed about 170 pounds.

The indictment charged that he was killed by two men, Henry Allen, Jr. and this appellant, Theo, alias Buddy Dye. A severance was demanded and granted; and the accused, Dye, was put upon trial, which resulted in his conviction of the offense of manslaughter in the first degree. His punishment fixed by the jury was five years imprisonment. The trial court duly adjudged him guilty and sentenced him to the penitentiary for a period of five years, in accordance with the verdict of the jury.

The testimony for the State in this case tends to show that about 7:30 p. m. on the night of December 22, 1947, the deceased left his home with his son and Henry Allen, and the appellant, to go on a fox hunt in the vicinity of Henry Allen's store. After the fox hunt the evidence shows that these men went into the store of Henry Allen's father, Mr. H. M. Allen, Sr. Henry Allen, Jr. lived in the rear of the store with his wife, while his father lived in a nearby cottage. The evidence further tends to show that the deceased, Henry Allen, Jr., and the appellant than begun to drink whiskey. A short time thereafter Henry Allen, Jr. and the deceased engaged in a heated argument which brought about a fight between the two. Henry Allen, threw the deceased onto the floor of the store and beat the deceased with a bottle. This encounter came to an end when the deceased apologized to Henry Allen. Subsequently,

these same men engaged in more whiskey drinking in the kitchen of the store. While Henry Allen's wife was preparing some food for these men the deceased is purported to have addressed some remarks or advances to Mrs. Allen. At this time, only Henry Allen's wife, the appellant and the deceased were in the kitchen. Henry Allen was in the adjoining room which was used as a bed room, Henry Allen, Sr. and the deceased's son were in the store which adjoined the room used as a kitchen. Henry Allen. Sr. heard a loud noise in the kitchen and when he ran into the kitchen he found the appellant Dye standing above the deceased who was lying on the floor. Henry Allen, Sr. testified that the appellant was bumping the deceased's head up and down on the floor. The testimony of Mr. Allen, Sr. is further supported by the testimony of the deceased's son who testified that while he and Mr. Allen were in the store that he heard a racket in the kitchen and then he heard somebody grunt and fall. He then ran to a place behind the store's stove where he could see into the kitchen and he testified that from that position he saw the appellant Dye standing over the deceased who was lying on the kitchen floor. In this connection also, the following voluntary statement was made by the appellant to Mr. J. Foy Guin, an attorney, and was introduced into evidence:

"On Monday night before Christmas 1947, Wm. Cummings was having supper at Allen's Store 6 miles E. of Phil Campbell on the Trapptown road. I, Theo Dyar (Buddie Dyar) was eating with him. We had been fox hunting. We were raised together and were well acquainted. Both of us were drunk.

"William made a remark to Mrs. Henry Allen, Jr. who had prepared our supper to which I took exceptions and he and I had a drunken fist and skull fight. Henry Allen and Henry Allen, Jr., had nothing to do with the fight or the argument, except that they did stop the fight, (so far as I know). I took William home and got the doctor for him."

The evidence also tends to show that some time after this second encounter the appellant and the deceased's son took the

deceased to his home. The deceased's widow testified that when her husband was brought home the next morning about 4 o'clock that he had been badly beaten, his face was swollen, and blood was running from his nose, ears and mouth, and he was unconscious.

Dr. Underwood testified to the effect that he attended the deceased the following morning. He testified that the deceased seemed to be in an unconscious condition and he was bleeding on the ear and nose and the deceased's face was bruised. The deceased was subsequently removed to a local hospital where he died. Dr. C. D. Pritchard testified that he treated the deceased from the time he was brought to the hospital on the 24th of December through December 29, 1947, when deceased died. Dr. Pitchard testified on direct examination that the deceased had a fractured skull and that the deceased died from meningitis. Said witness further testified that in his opinion the fracture of the skull caused the meningitis and that in his opinion the deceased died as an indirect result of a fractured skull.

Howard Cummings, Jr., an important State witness, testified that this appellant and also Henry Allen, Jr. both told him, "They both told me to forget what happened."

The defendant testified as a witness in his own behalf, and his testimony in some respects, was in conflict with the testimony adduced by the State.

The principal insistence of appellant is to the effect that the lower court erred to a reversal in refusing defendant's request for the affirmative charge; and also in overruling and denying his motion for a new trial on the ground, among others, that verdict of the jury is not sustained by the evidence.

Under the conflicting evidence the case was properly submitted to the jury, and it is the opinion of this court that it was sufficient to sustain the verdict rendered and to support the judgment of conviction pronounced and entered. Brewer v. State, 23 Ala.App. 116, 121 So. 689; Brown v. State, 20 Ala.App. 178, 101 So. 224; Hill v. State, 207 Ala. 444, 93 So.

460; Dillard v. State, 151 Ala. 92, 44 So. 396; Brown v. State, 15 Ala.App. 180, 72 So. 757.

The trial court delivered a most excellent, thorough and complete oral charge consisting of eight pages of the transcript, and in addition gave at the request of the defendant a large number of written charges. Every phase of the law involved on the trial of this case was fully and fairly covered. The exception to the oral charge was properly overruled, and the action of the court in overruling and denying the motion for a new trial was free of error.

No error appearing, the judgment of conviction from which this appeal was taken will stand affirmed.

Affirmed.