# CASES

IN THE

# SUPREME COURT OF ALABAMA,

## NOVEMBER TERM, 1896.

## Burton *v.* The State.

### *Indictment for Murder.*

| 115 | 1 |
|---|---|
| 116 | 478 |
| 119 | 9 |
| 115 | 1 |
| 124 | 18 |
| 124 | 19 |
| 124 | 65 |
| 125 | 54 |
| 115 | 1 |
| 132 | 9 |
| 115 | 1 |
| 136 | 30 |
| 115 | 1 |
| 138 | 37 |

1. *Trial and its incidents; when record must show presence of defendant in capital case; when judgment of conviction not sustained.*—A judgment of conviction under an indictment for an offense which may be punished capitally, can not be supported, when drawn in question on error, unless the record affirmatively shows that there was a day set for the trial of the cause when the defendant was personally present in court, and that there was a drawing of the special jurors for the trial as is required by the statute, (Cr. Code of 1886, p. 134, note, § 10.)

2. *Same; insufficiency of record can not be supplemented by reference to record on former appeal.*—On the second appeal in a criminal case, the Supreme Court can not supplement the deficiencies of the record as certified, by referring to the record on the former appeal.

3. *Same; former conviction of murder in the second degree as acquittal of higher offense, must be specially pleaded; when special jury should be drawn on second trial.*—On a trial under an indictment for murder, a conviction of murder in the second degree is an acquittal of the higher offense; but to be made available as such an acquittal, the former conviction must be specially pleaded on the second trial; and not being specially pleaded, the defendant is entitled to the observance of the mandatory requirements of the statute as to the fixing of the day and the drawing of a special venire for the second trial, as if there had been no former trial; and a failure to observe such requirements is reversible error.

4. *Evidence; map of locality of homicide admissible.*—On a trial under an indictment for murder, a map or diagram of the place of the homicide, indicating the locality of objects to which there was reference in the testimony, and upon which there can be traced the

1

route of travel the defendant was alleged to have followed in going to and returning from the place of the homicide, when taken in connection with the evidence of the draughtsman as to its accuracy, is admissible in evidence, and can be exhibited to the jury, although such map was prepared by the attorney for the prosecution.

5. *Same; same; witnesses can refer to such map in their testimony.* In such a case, where a map or diagram of the place of the homicide has been introduced in evidence and exhibited to the jury, in connection with the evidence of the draughtsman as to its accuracy, it is proper to permit other witnesses to refer to it in explanation or elucidation of their testimony.

6. *Same; same; such map can be taken by the jury in their retirement.* Where, on a trial of a case, a map of the *locus in quo* is introduced in evidence and used by the witnesses in explanation or elucidation of their testimony, the jury should, on their retirement, be allowed to take such map with them into the jury room. (*Campbell v. State,* 23 Ala. 83, holding that it was a matter of discretion with the trial court as to whether such map should be taken by the jury in retirement, overruled.)

7. *Same; admissibility of declarations by deceased.*—On a trial for murder, the declarations by the deceased as he was leaving home the afternoon of the homicide, having a gun and a pistol, that "he was going out to shoot some," is admissible in evidence.

8. *Same; admissibility of secondary evidence.*—When on the second trial of a criminal case, it appears that one of the witnesses who testified on the former trial is absent, and a witness who is examined on the second trial testifies that said absent witness resided in another State, that he had been at the house of the absent witness in a distant State, and that he could give substantially all of the evidence testified to by the absent witness on the former trial, both on direct and cross-examination, there is sufficient shown to render secondary evidence of the testimony of the absent witness admissible.

9. *Impeachment of witness; when sufficient predicate laid.*—Where in the examination of a witness he is asked to state if he did not make certain statements before the coroner's jury and before the grand jury, a sufficient predicate as to time and place is laid for the impeachment of said witness, by proving such statements on his denial of them.

10. *Same; competency of grand juror to disclose testimony of witness examined before the grand jury.*—Under the provisions of the statute, (Cr. Code of 1886, § 4351), a grand juror may be required by any court to disclose the testimony of any witness examined before the grand jury, for the purpose of ascertaining whether it is consistent with the testimony of the witness given on the trial before the court.

11. *Same; admissibility and relevancy of evidence.*—Where on a trial under an indictment for murder, there was evidence for the State tending to trace to the defendant's possession the revolver with which it was claimed deceased had when killed, and to show that the

[Burton v. The State.]

defendant had it when returning home from the place of the homicide, and the defendant's evidence tended to exclude the probability that if he had the revolver at the time and place referred to by the witnesses for the State, he could not, prior to his arrest, have disposed of or concealed it elsewhere than in or about the premises of his father, where he lived, the father of the defendant should be permitted to testify that on the next morning after the homicide and defendant's arrest, he searched his dwelling and the premises without finding the revolver; such evidence being relevant and admissible, while the significance of it depends upon the character of the search, to be determined by cross-examination.

13. *Charge to the jury ; credibility of witness.*—It is error to refuse to give a general charge which instructs the jury that they may disregard the testimony of a certain witness, if they believe that on the former trial of the case said witness swore that on the next morning after the homicide, she told a certain designated man and his wife, at their residence, that she saw the defendant late in the evening of the homicide coming from a certain direction, and that on the present trial she swore that she did not so tell such person at the time and place mentioned, and that she willfully swore falsely as to such matter on the former trial or the present trial.

14. *Same ; charges restricting, qualifying, or modifying charges already given should be refused.*—Instructions to the jury which need restriction, qualification or modification should be refused ; but after such charges are given, it is error for the court to give, at the request of the opposite party, charges restricting, qualifying or modifying such instructions.

APPEAL from the Circuit Court of Calhoun.

Tried before the Hon. GEORGE E. BREWER.

The appellant, Joe Burton, was indicted and tried for the murder of Jethro Evans, was convicted of manslaughter in the first degree, and sentenced to the penitentiary for five years.

The killing occurred in Cleburne county, and the indictment was preferred by the grand jury of said county ; but upon application of the defendant there was a change of venue, and the defendant was tried in the circuit court of Calhoun county. The facts pertaining to the killing are substantially the same as disclosed on the former appeal, and reported in 107 Ala. 108, and reference is here made to the report of the case there found.

Upon the examination as a witness of B. B. Bridges, one of the counsel for the prosecution, he testified that shortly after the homicide, on January 24, 1895, he made a map of the town of Edwardsville, near which

the killing occurred, and of the country surrounding it, including the lands and places thereabout. The witness produced said map or diagram, and further testified that while it was not made by actual measurement or with a square and compass, or by any special scale, the map was substantially correct, and showed correctly the relative positions of the places and objects marked upon it, and thereupon the witness explained in detail every line, mark and designation upon the map, and testified as to where he found the body of the deceased, and was proceeding to testify as to the location of different objects designated thereon, when the defendant objected to the witness using the map in his testimony, on the ground that it was illegal, inadmissible, was not shown to be correct, and was calculated to mislead the jury as to distance and topography of the country. The court overruled each of these objections, and the defendant separately excepted.

Upon the examination of Murro Evans, a brother of the deceased, and after he had testified that he saw Jethro, the deceased, with a gun and a pistol, going out of the yard the afternoon of the killing, the solicitor asked the witness the following question: "What, if anything, at this time, did deceased say about where he was going, and what he was going to do?" The defendant objected to this question, because the same was illegal and called for inadmissible and irrelevant testimony. The court overruled the objection and the defendant duly excepted. The witness answered: The said deceased, Jethro Evans, stated "that he was going out to shoot some." The defendant objected and moved to exclude this answer upon the same grounds as he objected to the question, and duly excepted to the court's overruling his objection. The witness further testified: "These were the last words I ever heard Jethro say."

W. M. Evans, the father of the deceased, was introduced as a witness, and testified as follows: That he knew Mrs. D. A. Sox, and that she resided at this present time in Tallapoosa, Ga. He was at her house in Tallapoosa, Ga., in January last, and she was sick in bed there then. He was present and heard her testify on the former trial of this case, and thought he could give substantially all her evidence on said trial, both on direct and cross-examination, in the order in which she

[Burton v. The State.]

gave it.  What witness understood by "substantially
all" was, that he could give all the leading parts of her
testimony on said trial.   After further explanation as to
the meaning of "substantially," witness said :   "Think
I can give substantially all her testimony, immaterial
as well as material, both on direct and cross-examina-
tion in the order in which it was delivered on the former
trial."   The solicitor then asked the witness :   "What
did Mrs. D. A. Sox swear on said former trial?"   The
defendant objected to said question because illegal,
irrelevant, inadmissible, and because the witness had
not shown himself competent to testify to what Mrs. D.
A. Sox had sworn to on the former trial.   The court
overruled the said objections of defendant and allowed
said witness to testify in answer to said question, and
the defendant excepted.   The witness then proceeded to
testify as to what Mrs. D. A. Sox had testified on the
former trial of this case.   The defendant introduced in
evidence the interrogatories propounded to, and the de-
position of, Mrs. Sallie E. Sox, a witness in his behalf.
Among the interrogatories propounded to this witness
was the question, asking her if she did not testify at the
coroner's inquest, and also before the grand jury, that
on the evening of the killing she saw the defendant and
he looked very pale, very much paler than usual, and
that he had something in his hip pocket, which caused
his coat to bulge out.   In answer to this cross-interroga-
tory, the witness answered that she did testify both be-
fore the coroner and before the grand jury, but that she
did not testify to such facts.

In rebuttal the State introduced two witnesses who
were respectively asked if Mrs. Sallie E. Sox did not
testify at the coroner's inquest and before the grand jury
that she saw the defendant on the evening of the killing,
and that he looked very pale, much paler than usual,
and that as he walked off she noticed that he had some-
thing in his hip pocket which caused his coat to bulge
out?   To the question to each of said witnesses the de-
fendant objected, upon the ground that it called for il-
legal, irrelevant and inadmissible evidence, and no suf-
ficient predicate had been laid to contradict the witness,
Mrs. Sallie E. Sox.   Each of these objections was over-
ruled, and the defendant separately excepted.  Each of
the witnesses answered that she had so testified.   One of

these witnesses was a member of the grand jury, and one of the grounds of objection interposed by the defendant to the question asked this witness was, ''that he could not disclose what transpired before the grand jury.'' This objection was also overruled, and the defendant duly excepted. The facts pertaining to the other rulings of the court upon the evidence, as well as the rulings thereon which are reviewed on this appeal, are sufficiently stated in the opinion.

There were many charges requested by the defendant, and to the refusal to give each of these charges the defendant separately excepted. Among the number was the following: (58.) ''The court charges the jury that if they believe from the evidence that the witness, Ella Tollerson, swore on the former trial of this case that she told Mr. and Mrs. Holloday on the next morning after the homicide at their residence in Edwardsville that she saw the defendant, Joe Burton, late on the evening of the homicide, coming from the direction of Mr. Stephens, and that on this trial she swore that she did not so tell Mr. and Mrs. Holloday at the time and place above mentioned, and if they further believe from the evidence that said Ella Tollerson willfully swore falsely as to the above matter on either the former trial or on this trial, then the jury may disregard and give no weight to any portion of the testimony she testified to on this trial.''

It is deemed unnecessary to set out at length any of the other charges requested by the defendant, or those which were given by the court at the request of the State.

R. B. KELLY, JAMES AIKEN, D. D. McLEOD and W. J. SAMFORD, for appellant.—1. The record shows that defendant was indicted for a capital felony, and it fails to show that a day was set for his trial, and a special jury drawn therefor.—*Spicer v. State,* 69 Ala. 162, and cases cited; *Breden v. State,* 88 Ala. 20; *Posey v. State,* 73 Ala. 490; *Finley v. State,* 61 Ala. 201; *Cross v. State,* 63 Ala. 40; *Scott v. State,* 63 Ala. 59; *Phillips v. State,* 68 Ala. 469; *Oliver v. State,* 66 Ala. 8; Cr. Code of 1886, p. 134, note, §§ 10, 11, and § 4449. The record shows that only the plea of not guilty was interposed, and that the court charged the jury as to all the degrees of homicide. A former acquittal must be specially pleaded, and the record of it

[Burton v. The State.]

is not admissible under the plea of not guilty.—*Rickles v. State*, 68 Ala. 538; *DeArman v. State*, 77 Ala. 10; *Baysinger v. State*, 77 Ala. 60; *Jordan v. State*, 81 Ala. 20. Without waiving other points raised by the record, it is respectfully submitted the errors herein referred to necessitate a reversal of the case.

2. The court erred in the admission of the evidence of W. M. Evans as to what Mrs. D. A. Sox swore on the former trial.—*Harris v. State*, 73 Ala. 495; *Marler v. State*, 67 Ala. 56; *Thompson v. State*, 106 Ala. 75; *Wheat v. State*, 110 Ala. 68; *Burton v. State*, 107 Ala. 68; *Berger v. People*, 65 Amer. Dec. 672, and note.

3. The court erred in admitting the map prepared by B. B. Bridges as evidence. It was not shown to be correct, and if it had been, the State can not make testimony for itself in that way. The map is made to take the place of the ground, the scene of the alleged homicide, and the surrounding country. The map was admitted as evidence, and allowed to go to the jury. *Humes v. Bernstein*, 72 Ala. 546; *Bridges v. McClendon*, 56 Ala. 327; *Clements v. Pearce*, 63 Ala. 284.

4. The court erred in refusing to give charge No. 58. *Prater v. State*, 107 Ala. 26; *Harris v. State*, 96 Ala. 24; *Williams v. State*, 114 Ala. 58.

WILLIAM C. FITTS, Attorney-General, and MERRILL & BRIDGES, for the State.—The charge numbered 58, requested by the defendant, was properly refused. There is no error in the refusal of the court to charge the jury that if a witness has testified falsely to any material fact, they should disregard his evidence altogether. *Lowe v. State*, 88 Ala. 8; *Moore v. State*, 68 Ala. 360.

The charges given at the instance of the State were explanatory charges and were properly given.—*Brown v. State*, 108 Ala. 18; *McKleroy v. State*, 77 Ala. 95.

BRICKELL, C. J.—1. The indictment is in the form prescribed by the Code, and avers all the elements and constituents of murder in the first degree, which may be punished capitally—by death, or by imprisonment in the penitentiary for life. The defendant having pleaded not guilty, the primary duty of the court, a duty to be performed in the personal presence of the defendant, was the setting a day for the trial of the

[Burton v. The State.]

cause ; and the day having been set, at least one entire day prior thereto, the drawing of special jurors, not less than twenty-five nor more than fifty, as the court deemed necessary, to be summoned by the sheriff, under the order of the court, and added to the panel of petit jurors organized for the week ; the two constituting the *venire* (as it is termed in the statute), from which the jury for the trial were to be selected.—Cr. Code of 1886, p. 134, note, § 10. A judgment of conviction on an indictment for an offense which may be punished capitally, cannot be supported, when drawn in question on error, unless it is shown affirmatively by the record, that there was by the court performance of these duties. *Spicer v. State*, 69 Ala. 159 ; *Sylvester v. State*, 71 Ala. 17 ; *Posey v. State*, 73 Ala. 490 ; *Jordan v. State*, 81 Ala. 20 ; *Washington v. State, Ib.* 35 ; *Watkins v. State*, 89 Ala. 82. The present record does not affirmatively show that a day was set for the trial of the cause, nor that there was the drawing of the special jurors for the trial, as the statute requires. It appears rather from the record, that there was not observance of the statute in either respect.

If it were permissible to look to the record of this case when here at a former term, (*Burton v. State*, 107 Ala. 108), it would appear that there had been a trial on which there was a conviction of murder in the second degree, operating an acquittal of murder in the first degree, if the acquittal had been pleaded specially by the defendant, withdrawing the case from the operation of the statutes in regulation of trials for offenses subject to capital punishment.—*Jordan v. State, supra.* But we can not supplement the deficiency of records by referring to the records of the former terms of this court, though it may be a record in the particular case. And if the record was looked to, the error of the court would not be cured. The acquittal of murder in the first degree, under the practice established in *DeArman v. State*, 77 Ala. 10, emphasized by the rule of practice promulgated by this court December 18, 1887 (82 Ala. viii), requires the acquittal to be pleaded specially to avoid a conviction of that offense. The record does not disclose the filing of the plea, and as the case is presented, there was not the observance of the mandatory requirements of the statute ; the failure to observe

[Burton v. The State.]

them is an error necessitating a reversal of the judgment of conviction.

2.    The map or diagram, prepared by counsel assisting the solicitor, of the place of the homicide, indicating the locality of objects to which there was much of reference in the testimony, upon which the line or route of travel could be traced it was alleged the defendant followed in going to and returning from the place of the homicide, taken in connection with the evidence of the draughtsman as to its accuracy, it was proper to introduce and exhibit to the jury; and it was proper to permit other witnesses to refer to it in explanation or elucidation of their testimony.—*Burton v. State*, 107 Ala. 108.    In actions of ejectment, it is a frequent practice to introduce maps or diagrams of the *locus in quo* in controversy, for the purpose of ascertaining its boundaries or otherwise identifying it.—1 Whart. Ev., (2d ed.), § 677; *Nolin v. Parmer*, 21 Ala. 66. In *Shook v. Pate*, 50 Ala. 91, it was said by PETERS, C. J.: "A diagram is simply an illustrative outline of a tract of land, or something else capable of linear projection, which is not necessarily intended to be perfectly correct and accurate. In many instances this cannot be made to appear.    At best, it is but an approximation; and in this sense, it is indifferent by whom it is made.    In this case, it was not offered as a plat of the survey of the lands in question, but only as a means of explanation of the witnesses' description of the lands.    This was competent and relevant.    A witness may as well speak by a diagram or linear description, when the thing may be so described, as by words."    It is true, that testimony prepared by a party for the use of a trial, is not regarded with favor, and should be rigorously scrutinized.    Consciously or unconsciously, maps or diagrams of localities they prepare or cause to be prepared, may be a representation more favorable to themselves than would be a delineation or representation prepared by an indifferent stranger, not having any regard to the uses to which it was to be applied.    This is an infirmity incident to all testimony, oral or written.    How far the map or diagram was an accurate representation, was matter for the consideration of the jury, as was the credibility of the draughtsman in support of its accuracy; as was also the extent to which they were aided by it in understand-

ing the testimony having reference to the localities, distances and all the various objects shown by it. Having been exhibited to the jury and used by the witnesses in explanation or elucidation of their testimony, the map or diagram would not have served all its purposes as an instrument of evidence, if the jury had not been permitted to take it with them on their retirement. As was very properly said by POLAND, C. J., in *Wood v. Willard*, 36 Vt. 82, s. c. 84 Am. Dec. 659, if the jury were not to see the map or diagram at all, it was of no use ; and if they were to see it, they should have it before them until the case was ended by a verdict. The rule was doubtless, formerly, as stated in *Campbell v. State*, 23 Ala. 83, that it was a matter of discretion with the trial court whether a map or diagram should go to the jury ; but the more recent authorities hold that the jury should, on their retirement, take it with them.

3. The declarations of the deceased as he was leaving home on the afternoon of the homicide, having a gun and pistol, that "he was going out to shoot some," were admissible evidence. They were "verbal acts indicating a present purpose and intention," and admissible like any other evidence of material facts.—1 Green. Ev., § 198 ; *Pitts v. Burroughs*, 6 Ala. 733. Whether it was permissible for the witness to add that these were the last words he ever heard the deceased utter, is not before us for consideration, as it does not appear from the bill of exceptions, objection was made to their admissibility.

4. It is a settled rule in this court, that if a witness who has been examined in a criminal case before a tribunal of competent jurisdiction, is not subsequently, after diligent search, found within the jurisdiction of the court, or if it be shown that his place of permanent residence is without the State, it is admissible to prove the substance of the evidence he gave formerly.—*Burton v. State*, 107 Ala. 68 ; *Mitchell v. State*, 114 Ala. 1, and authorities cited. Without repetition or particular discussion of the evidence, it is enough to say that the residence of the absent witness, Mrs. D. A. Sox, was shown to be in Tallapoosa, Ga., and that the witness, Evans, showed his ability to state the substance of the evidence she had given on the former trial, on her examination in chief and on the cross-examination, render-

ing the secondary evidence admissible.—1 Green. Ev., § 166.

5. The credit of a witness may be impeached by showing that on some former occasion he has made statements inconsistent with his testimony upon the trial. But before this can be done, a proper predicate must be laid—the witness must be inquired of as to the time, place, and person involved in the supposed contradiction.—1 Green. Ev., § 462. A proper predicate was laid for the contradiction of the witness for the defendant, Sallie E. Sox. The contradictory statements imputed to her, were involved in her examination before the coroner's jury and her examination before the grand jury. The inquiry directed her attention to her statements on these examinations, and was sufficiently definite to enable her to recall and explain all that she may have said in the course of the examinations. The competency of a grand juror to disclose the testimony of a witness examined before-the grand jury, for the purpose of ascertaining whether it is consistent with the testimony of the witness given on the trial before the court, is declared by statute.—Cr. Code of 1886, § 4351.

6. When the case was formerly before the court, the statements and confessions imputed to the defendant, were declared admissible as evidence; their credibility, their weight or effect being matter for the consideration and determination of the jury, in view of all the circumstances attending them. There is no change of evidence as to the voluntariness of these statements or confessions, and they were admissible. The like observation applies to the admissibility of the notes found on the body of the deceased.—*Burton v. State*, 107 Ala. 108. There are other objections to the admissibility of evidence, which have been considered, but we do not deem it necessary to pass upon them severally. They are met by former decisions of this court, or by the former decision in this case, and by what we have now said and decided.

7. The general principle by which the relevancy of evidence is tested, is well defined; but there is much of difficulty in its application to the varying facts and circumstances of particular cases. The test, it it said by Wharton, is whether the particular fact or circumstance proposed to be introduced, "conduces to the proof of a

pertinent hypothesis; a pertinent hypothesis being one which, if sustained, would logically influence the issue." 1 Whart. Ev., § 20. It is said by Greenleaf, that it is not necessary, that the evidence should bear *directly* upon the issue; that it is admissible if it *tends* to prove the issue, or constitutes a link in the chain of proof, although alone it might not justify a verdict in accordance with it.—1 Green. Ev., § 61*a*. There was evidence introduced by the State, the tendency of which was to trace to the possession of the defendant the revolver it is alleged the deceased had at the time of the homicide; and which has also a tendency to show that the defendant had it when returning home from the place of the homicide. The tendency of the evidence introduced by the defendant, was in exclusion of the probability that if he had the revolver at the time and place referred to by the witnesses for the State, Foster and Mrs. D. A. Sox, he could not prior to his arrest, have disposed of or concealed it, elsewhere than in or on the dwelling and premises of his father—his home. Tested by the rules we have stated, we are of opinion, the father should have been permitted to testify, that on the next morning after the homicide, and the arrest of the defendant, he made search of his dwelling and premises, without finding the revolver. The significance of the evidence will depend upon the character of the search, as to which there will be opportunity for cross-examination. The fact of the search and the failure to find the revolver, taken in connection with the evidence having a tendency to exclude the probability that if the defendant had it at the time and place referred to by Foster and Mrs. Sox, he could not have disposed of or concealed it elsewhere than in his father's house, or about the premises, is not wholly foreign from the case. In itself, it may be weak and inconclusive; its weight is for the consideration of the jury. We cannot say that it is without tendency to support a pertinent hypothesis involved in the issue upon which the jury were to render a verdict. Grave as is the duty resting upon the court to guard against the introduction of irrelevant evidence, the duty is of equal gravity, to submit to the jury all evidence of facts having a tendency, though remote, to the elucidation of the case in any of its aspects.

8. The several instructions requested by the defend-

[Burton v. The State.]

ant and refused, have been examined; and we do not find there was error in the refusing but one of them. Without analyzing and discussing the others in detail, it may be said, with the exception of the one to which we will refer presently, that they do not state correct legal propositions, or are involved, argumentative, or misleading. The instruction, that upon the facts hypothesized, the jury could properly disregard the evidence of the witness Ella Tollerson, should have been given.—*A. G. S. R. R. Co. v. Frazier*, 93 Ala. 45, and authorities cited. The instruction does not involve an arbitrary, or capricious, unreasoning rejection of the testimony of the witness, but the authority of the jury to disregard it, because of its infirmities. And surely it cannot be insisted, that it was the duty of the jury to accept or regard it, to give force to it in making up their verdict, if it was infected with the infirmities hypothsized.

9. Several of the instructions given at the instance of the State, purport to be in explanation of instructions given at the instance of the defendant, and others are in form, distinct from and independent of all other instructions. The first series of instructions are not explanatory, but they are in restriction, or qualification, or modification of the instructions which had been given at the instance of the defendant. This is their real nature and effect, from which they cannot be relieved by entitling them as explanatory. If the instructions needed restriction, or qualification, or modification, they should have been refused; but having been given, it was not within the province of the court subsequently, to lessen their force and effect, by restrictions, modifications, or qualifications.—*Eiland v. State*, 52 Ala. 322. We do not discover error in the other instructions.

For the errors pointed out, the judgment must be reversed and the cause remanded; the defendant will remain in custody until discharged by due course of law.

Reversed and remanded.